**James A. HOPPER, Appellant
(Defendant Below),**

**v.**

**STATE of Indiana, Appellee
(Plaintiff Below).**

No. 2–985A303.[1]

Court of Appeals of Indiana,
First District.

March 17, 1986.

Rehearing Denied April 25, 1986.

---

**9.** We note that filed financing statements are effective as a general rule for five years. *See* IND. CODE 26–1–9–403(2) (Supp.1985).

**1.** Diverted from the Second District by direction of the Chief Judge.

William F. Thoms, Jr., Indianapolis, for appellant (defendant below).

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee (plaintiff below).

ROBERTSON, Presiding Judge.

The defendant-appellant James A. Hopper (Hopper) brings this direct appeal from a judgment of guilty of child molesting, a class C felony.

We affirm.

The evidence favorable to the verdict discloses that on January 4, 1984, Christine Stevens, Betty Hopper (Hopper's wife) and Renee Walk left Renee's two children, Bradley and the two and one-half year-old victim, J.W. with Hopper while the women went to a nearby store. Ten minutes later, after returning to the Hopper apartment, the women discovered the front door locked. Peering into the living room through a window, witness Stevens observed Hopper sitting on a couch, the belt

of his pants unbuckled, the button unbuttoned, and the zipper pulled down. His pants were pulled open on one side. J.W. was seen lying next to Hopper on the couch. She was clad only in a T-shirt, and her legs were spread apart. When Renee Walk looked through the window, she saw Hopper pick J.W. up in one arm and pull on her underpanties. As he did so he carried J.W. out of the living room toward the back of the apartment.

In the meanwhile, the women had knocked on the door and demanded to be let in. Hopper returned to open the door, without J.W., about one minute after he carried J.W. out of the room.

Once inside the apartment, Walk and Stevens took J.W. into the bathroom. Walk asked her what Hopper had done to her. J.W. answered, "Mommy, he touched my 'pee-pee'" "and my butt with his 'peter'." An examination of J.W. revealed reddening around the opening of her vagina.

Hopper was charged with one count of child molesting by fondling or touching.[2] A jury trial commencing on September 13, 1984, ended in a mistrial after the jury was unable to reach a verdict. After a second trial commencing April 1, 1985, the jury returned a verdict of guilty as charged. Hopper perfected this appeal after denial of his motion to correct errors.

Hopper raises these issues as error:

I. Whether IND.CODE 35–37–4–6 is unconstitutional because it denies an accused the Sixth Amendment right to confront his accusers.

II. Whether the trial court erred by denying Hopper's request for a continuance and in admitting statements under I.C. 35–37–4–6, where the State failed to give proper notice under the statute.

III. Whether permitting the prosecutor to cross-examine Hopper regarding his prior conviction of sodomy was error.

IV. Whether the court erred by refusing to instruct the jury that it could find Hopper guilty of battery, a lesser included offense.

V. Whether the court erred in refusing to read to the jury Hopper's tendered instructions numbered 3, 4, 5, 6, 7, 8 and 10.

VI. Whether there was sufficient evidence to support Hopper's conviction of child molesting.

ISSUE I:

The trial court allowed witnesses Christine Stevens and Renee Walk to testify to J.W.'s statement pursuant to I.C. 35–37–4–6 (1984 Supp.). Hopper contends that I.C. 35–37–4–6 is unconstitutional because it permits out-of-court statements of a declarant, unavailable to testify at trial, to be admitted into evidence, thus violating Hopper's right to confront his accusers. U.S. Const. amend. 6; Ind. Const. art. 1 § 13.[3]

We set out pertinent portions of the statute below:

(b) A statement that:

(1) is made by a child who was under ten (10) years of age at the time of the statement;

(2) concerns an act that is a material element of an offense listed in subsection (a) [including child molesting] that was allegedly committed against the child; and

(3) is not otherwise admissible in evidence under statute or court rule;

is admissible in evidence in a criminal action for an offense listed in subsection (a) if the requirements of subsection (c) are met.

---

**2.** The information charged that under I.C. 35–42–4–3, Hopper:

... did perform or submit to fondling or touching with [J.W.], a child who was then under the age of twelve (12) years, to-wit: TWO (2), with intent to arouse or satisfy the sexual desire of JAMES A. HOPPER ..." J.W. was actually two years, six months old when the incident occurred.

**3.** U.S. Const. amend. 6 states that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...."

Ind. Const. art. 1 § 13 provides that, "[i]n all criminal prosecutions, the accused shall have the right ... to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor."

(c) A statement described in subsection (b) is admissible in evidence in a criminal action listed in subsection (a) if, after notice to the defendant of a hearing and of his right to be present:

(1) the court finds, in a hearing:

(A) conducted outside the presence of the jury; and

(B) attended by the child;

that the time, content, and circumstances of the statement provide sufficient indications of reliability; and

(2) the child;

(A) testifies at the trial; or

(B) is found by the court to be unavailable as a witness because:

(i) a psychiatrist has certified that the child's participation in the trial would be a traumatic experience for the child;

(ii) a physician has certified that the child cannot participate in the trial for medical reasons; or

(iii) the court has determined that the child is incapable of understanding the nature and obligation of an oath.

(d) If a child is unavailable to testify at the trial for a reason listed in subsection (c)(2)(B), a statement may be admitted in evidence under this section only if there is corroborative evidence of the act that was allegedly committed against the child.

When a party challenges the constitutionality of a statute, this court will presume its constitutionality until the challenging party makes a clear showing to the contrary. *Hunter v. State*, (1977) 172 Ind. App. 397, 360 N.E.2d 588, *cert. denied*, (1977) 434 U.S. 906, 98 S.Ct. 306, 54 L.Ed.2d 193; *Sidle v. Majors*, (1976) 264 Ind. 206, 341 N.E.2d 763. Hopper cannot prevail on his claim that I.C. 35–37–4–6 is unconstitutional on its face. The United States Supreme Court examined the relationship between the confrontation clause and the hearsay rule and its exceptions in

*Ohio v. Roberts*, (1980) 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597. In *Ohio v. Roberts*, the Court held that in order for admission of hearsay statements to comport with the Confrontation Clause, the proponent of the statements must show that the declarant is unavailable to testify at trial, and that the statement bears adequate indicia of reliability. *Ohio v. Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539, 65 L.Ed.2d at 608.

■ Under I.C. 35–37–4–6, the hearsay statement of a child victim may be admitted at trial only if the trial court determines that the time, content, and circumstances of the statement provide sufficient indications of reliability, and that the child either testifies at trial or is found by the court to be unavailable to testify under certain circumstances. Furthermore, by demanding corroborative evidence of the act allegedly committed against the child if he is unavailable, the statute goes beyond the requirements of *Ohio v. Roberts*, *supra*. Hopper has failed to demonstrate any facial constitutional infirmity in I.C. 35–37–4–6.

■ Hopper does not dispute that J.W. was unavailable to testify, since the trial court found her incapable of understanding the nature and obligation of an oath. *See.* I.C. 35–37–4–6(c)(2)(B)(iii).[4] Moreover, J.W.'s statement bore indications of reliability, since reliability may be inferred, without more, where the evidence falls within a "firmly rooted hearsay exception." *Ohio v. Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539, 65 L.Ed.2d at 608.

■ The statement of J.W. falls well within the excited utterance, or spontaneous exclamation exception to the traditional hearsay rule. In *Choctaw v. State*, (1979) 270 Ind. 545, 387 N.E.2d 1305, our supreme court ruled the hearsay statements of a rape victim admissible, where they were

---

**4.** Hopper urges that J.W.'s statement must be excluded because J.W. is incompetent to be a witness. That is not the law in Indiana. I.C. 34–1–14–5, which states that children under ten years of age are not competent witnesses, unless they are capable of understanding the nature and obligation of an oath, pertains to in-court testimony, not out-of-court statements. *Jarrett v. State*, (1984) Ind., 465 N.E.2d 1097.

admitted through the investigating officer. The victim had given the statements to a police officer within one hour of the incident while still in a state of mental excitement from the ordeal. The court found that the "... circumstances of time and mental condition diminish the probability that the victim deliberated and fabricated this story, and render these utterances trustworthy." *Choctaw*, 387 N.E.2d at 1308. In contrast, an earlier supreme court case held that statements of the five-year-old victim given to her mother two hours after the incident did not constitute a spontaneous exclamation, where the entire story was drawn out reluctantly upon questioning the victim. *Ketcham v. State*, (1959) 240 Ind. 107, 162 N.E.2d 247.

In the present case, J.W. made the statement in response to a general question by her mother, within a few minutes of the incident. There was evidence that at the time of the statement, J.W. appeared upset, although she was not crying. We find under the precise circumstances of this case, little likelihood that J.W.'s statement could have been the result of deliberation or fabrication.

In addition, the state presented corroborating evidence of the act in the form of testimony of Walk and Stevens, which is required when the child is unavailable because she is incompetent to testify. *See* I.C. 35-37-4-6(d).

We hold that admission of J.W.'s hearsay statement was proper under the child hearsay statement and was in accordance with the constitutional prerequisites of *Ohio v. Roberts, supra.*

ISSUE II:

Hopper argues that J.W.'s statement should not have been admitted into evidence because the State failed to comply with the notice provisions of I.C. 35-37-4-6(e):

(e) A statement may not be admitted in evidence under this section unless the prosecuting attorney informs the defendant and the defendant's attorney of:

(1) his intention to introduce the statement in evidence; and

(2) the content of the statement; within a time that will give the defendant a fair opportunity to prepare a response to the statement before the trial.

At a hearing held on the day of Hopper's second trial, the trial court examined J.W. to determine her competency to testify. After ruling that J.W. was incapable of understanding the nature of the oath, the State presented testimony tending to establish the circumstances surrounding the statement made by J.W. in the presence of Walk and Stevens. This hearing was attended by J.W., as mandated at I.C. 35-37-4-6(c)(1). At the conclusion of this hearing, the judge ruled that the statement was sufficiently reliable. Hopper moved for a continuance prior to the hearing and at its conclusion, before trial, on the grounds that the prosecutor failed to inform him before that morning of the State's intention to offer J.W.'s statement and the content of the statement.

 The judge did not abuse his discretion in overruling Hopper's motions for a continuance. *See Jacobs v. State*, (1982) Ind.App., 436 N.E.2d 1176. The record discloses that copies of the statements of Renee Walk containing J.W.'s statement were delivered to Hopper on September 10, 1984, pursuant to State's Notice of Discovery Compliance. Further, there was no error in admitting the statement, where Hopper was aware at least six months before trial of the contents of the statement and the State's intention to introduce the statement at trial, either through the child witness or through her mother.

ISSUE III:

 Hopper next complains that the prosecutor should not have been permitted to question him on cross-examination about Hopper's prior conviction for sodomy. Hopper's attorney had asked him about the 1978 conviction on direct examination. Hopper objects to the following questions by the prosecutor, which he maintains were utilized solely to inflame the passions of the jury:

Q. Mr. Hopper, what does the term "sodomy" mean? [Objection overruled]

A. I don't know what it means.

Q. You don't know what sodomy means?

A. No, I don't.

Q. Don't have any idea?

A. I could make a guess if I had to.

Q. Why don't you make a guess. ·

Record at 383–84.

Hopper has failed to cite any cases which would support his contention that such questioning was unduly prejudicial to the defendant, or meant only to inflame the passions of the jury. To the contrary, the prosecutor appears to be attempting to cross-examine a recalcitrant witness, which he has an obligation to do. Moreover, questioning about the prior sodomy conviction was proper under *Fultz v. State*, (1982) Ind.App., 439 N.E.2d 659. (A defendant may "open the door", permitting evidence of other criminal convictions, where direct examination of defendant tenders evidence of otherwise excludable criminal convictions). Hopper has failed to demonstrate error.

ISSUE IV:

■ For Hopper's fourth allegation of error, he argues that the jury should have been instructed on battery as a lesser-included offense. To determine whether Hopper could properly be convicted of battery, we must examine whether the offense of battery is included within the charged crime of child molesting, and whether an instruction on battery would have conformed to the evidence presented at trial. *See Lawrence v. State*, (1978) 268 Ind. 330, 375 N.E.2d 208; *Maxwell v. State*, (1980) Ind.App., 408 N.E.2d 158.

An instruction on battery would not have conformed to the evidence heard at trial, even assuming that battery is a lesser included offense of child molesting. Battery is defined at I.C. 35–42–2–1 as knowingly or intentionally touching another person in a rude, insolent, or angry manner. We believe the evidence revealed no serious dispute regarding the element distinguish-

ing battery and the offense charged: touching with intent to arouse or to satisfy the sexual desires of either the child or the older person. The evidence supported a finding that Hopper was guilty of child molesting or no crime at all. The evidence did not warrant giving an instruction on battery. *See Best v. State*, (1982) Ind.App., 439 N.E.2d 1361.

ISSUE V:

■ Hopper also claims error in the trial court's failure to give Hopper's tendered jury instructions # 3, 4, 5, 6, 7, 8 and 10. In deciding whether the court should have given an instruction tendered by a party, we must determine: 1) whether the tendered instruction correctly states the law, 2) whether there is evidence in the record to support the giving of the instruction, and 3) whether the substance of the tendered instruction is covered by other instructions which are given. *Spears v. State*, (1980) 272 Ind. 634, 401 N.E.2d 331, 334, modified, 272 Ind. 647, 403 N.E.2d 828.

Hopper's tendered instruction number 3 reads:

"You are hereby instructed that if the State fails to prove beyond a reasonable doubt that the Defendant did entertain the specific intent to commit the crime charged or included in the indictment, then it is your duty to acquit him."

The substance of tendered instruction 3 was adequately covered by the court's preliminary instructions numbered 2, 3, and 4, and final instruction 9. The jury was instructed on the elements of the charged offense, that the State must prove beyond a reasonable doubt each element of the offense, and the definition of reasonable doubt. Accordingly, there was no error in refusing Hopper's tendered instruction # 3.

Hopper also claims that his tendered instructions numbered 4 and 5 should have been read. Summarized, they inform the jury of the difference between direct and circumstantial evidence, reiterate the burden of proof, and advise the jury that where a conviction is based on entirely circumstantial evidence, it must be of such persuasive force as to exclude every rea-

sonable hypothesis of innocence. The language of the court's final instruction 8 is substantially the same as that of Hopper's tendered instructions 4 and 5. Because Hopper has not presented any cogent argument from which we might discern any shortcoming in court's final instruction 8, we must deem any error waived. Indiana Rules of Procedure, Appellate Rule 8.3(A)(7).

 Hopper's tendered instruction number 6 reads as follows:

"Evidence has been introduced in this case that the defendant has been heretofore convicted of a crime. You have the right to consider such evidence for whatever bearing it has on his credibility as a witness, but you may not consider such evidence for any other purpose, nor can you draw from it the inference that, because he has been previously convicted of a crime, it is therefore more likely that he is guilty of the crime with which he is now charged."

The record does not support giving Hopper's tendered instruction 6. As we observed earlier, evidence of the prior sodomy conviction was put into evidence by Hopper. Accordingly, the jury would not have been required to limit its consideration of the evidence to impeachment of Hopper's credibility. *See generally Fultz, supra.* There was no reversible error.

 Hopper's tendered instructions 7 and 8 proposed to tell the jury that Hopper testified as a witness in the trial, and that his testimony should not be disbelieved solely because he was the accused. His Instruction 7 went on to suggest to the jury how to weigh Hopper's testimony. These are precisely the instructions which our supreme court has found are not required to be given, although the court would not have erred in giving them. *Marbley v. State,* (1984) Ind., 461 N.E.2d 1102; *Taylor v. State,* (1976) 265 Ind. 433, 355 N.E.2d 247. No error resulted from the court's omission.

Finally, Hopper submits that the court should have read his instruction 10, instead of the court's final instruction 9A. Hopper's tendered instruction reads:

It has previously been determined that the two and one-half year old alleged victim in this cause is not capable of understanding the nature and obligation of an oath and is, therefore, not a credible witness to testify before you. Therefore, it is your obligation to consider and evaluate any statements attributed to a person who has been deemed to be not competent to personally testify before you.

 The court properly refused this instruction, because it is an incorrect statement of the law. Competency of a witness to testify is a question of law to be decided by the trial court. *Ware v. State,* (1978) 268 Ind. 563, 376 N.E.2d 1150. The issue of competency is distinct from that of a witness's credibility, which is an issue left for the jury to decide. *Id.* Therefore, since Hopper's tendered instruction 10 states that the statement of J.W. is not credible because it is attributed to an incompetent witness, the instruction should not have been given. Moreover, Hopper's contention that the court's final instruction 9A impermissibly comments on the weight to be accorded a particular witness's testimony is wholly without merit. Hopper has failed to demonstrate any reversible error with respect to jury instructions.

ISSUE VI:

 For Hopper's final allegation of error, he claims that the evidence was insufficient to support his conviction for child molesting. Our standard of review does not permit us to reweigh the evidence or redetermine the credibility of the witnesses. *Finchum v. State,* (1984) Ind.App., 463 N.E.2d 304. Our previous discussion of the evidence makes apparent that it was sufficient to sustain the verdict. In view of our holding that the child's statement was admissible, coupled with the testimony of Walk and Stevens regarding what they saw through the window of the apartment, we believe the State's case properly went to the jury. In addition, specific intent may

be inferred from all the surrounding circumstances; evidence of the touching of the victim's genital area justifies an inference that Hopper acted with the intent to arouse or gratify sexual desires. *Hammond v. State*, (1985) Ind.App., 479 N.E.2d 629.

Judgment affirmed.

RATLIFF and NEAL, JJ., concur.