**Annabel MILLER, Appellant
(Defendant Below),**

**v.**

**STATE of Indiana, Appellee
(Plaintiff Below).**

**No. 63S01–8712–CR–1180.**

Supreme Court of Indiana.

Dec. 29, 1987.

Susan K. Carpenter, Public Defender, Margaret S. Hills, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Today we must decide whether the constitutional right of confrontation prohibits the admission of the videotaped statement of a child molesting victim when the child does not testify at trial and the defendant is not afforded the opportunity to cross-examine.

Appellant Annabel Miller, her husband, her son, and her son-in-law were accused of systematically molesting several of the family grandchildren over a period of four years. The initial charges against Miller consisted of four counts of child molesting, three counts of incest, two counts of confinement, and two counts of battery. The charges involved the abuse only of grandchild A.M., who was approximately five years old when the incidents began.

The mother of the other victims discovered the molestations and contacted police. The investigating officer, Indiana State Police Detective Charles Perkins, interviewed A.M. approximately ten times between the start of the investigation and the videotaping of her statement. Some of those interviews were tape recorded and transcribed. They show that the detective used strongly leading questions and that A.M.'s initial descriptions of the attacks were somewhat inconsistent with her videotaped statement. The transcriptions also revealed that police induced A.M. to talk by promises that she would be helping her molested cousin and eventually might visit her.

On November 9, 1984, the State filed a motion seeking to admit A.M.'s videotaped

statement into evidence at trial, although such a statement had not yet been taken. Pursuant to Ind.Code § 35–37–4–6 (Burns 1987 Supp.),[1] which provides for the admission of the videotaped statements of sex abuse victims under the age of ten, the trial court scheduled a hearing for December 5. On November 26, Detective Perkins and social worker Lisa Berry interviewed the child on videotape. Although Detective Perkins led the questioning, Berry interjected queries when A.M. appeared hesitant or did not offer the answer which the detective obviously was seeking. A.M.'s statement provided a vivid account of numerous molestations and batteries by Miller. Neither the defendant nor his counsel were notified of the videotaping or given the opportunity to attend.

Miller was allowed to view the videotape before the December 5 hearing, which was a multi-faceted proceeding to determine the competency of A.M., her availability as a witness, and the admissibility as a witness, and the admissibility of the videotaped statement. Although A.M. was within the courthouse, she appeared in court only briefly and for the sole purpose of answering the judge's questions concerning her competency. The court did not allow Miller to cross-examine A.M.

At the conclusion of the hearing, the court ruled that A.M. was competent but unavailable to testify at trial because a psychiatrist certified that her participation would be traumatic. Ind.Code § 35–37–4–6(c)(2)(B)(i). The court also ruled that the videotape was admissible under Ind.Code § 35–37–4–6. Shortly before trial, Miller waived trial by jury, and the State dismissed the three charges of incest. Despite the defendant's Sixth Amendment confrontation objection, the videotaped statement was admitted at trial. Detective Perkins and the social worker testified about the various oral statements which A.M. had made in their presence, including the one on videotape. A.M. did not testify at trial.

At the conclusion of the State's case, the defense moved for judgment on the evidence, which the court granted as to one count of child molesting. The court ulti-

---

1. It provides:

*Admissibility of statement or videotape of a child of ten or under in certain criminal actions.*—(a) This section applies to criminal actions for the following:
　(1) Child molesting (IC 35–42–4–3).
　(2) Battery upon a child (IC 35–42–2–1(2)(B)).
　(3) Kidnapping (IC 35–42–3–2).
　(4) Confinement (IC 35–42–3–3).
　(5) Rape (IC 35–42–4–1).
　(6) Criminal deviate conduct (IC 35–42–4–2).
(b) A statement or videotape that:
　(1) Is made by a child who was under ten (10) years of age at the time of the statement or videotape;
　(2) Concerns an act that is a material element of an offense listed in subsection (a) that was allegedly committed against the child; and
　(3) Is not otherwise admissible in evidence under statute or court rule;
is admissible in evidence in a criminal action for an offense listed in subsection (a) if the requirements of subsection (c) are met.
(c) A statement or videotape described in subsection (b) is admissible in evidence in a criminal action listed in subsection (a) if, after notice to the defendant of a hearing and of his right to be present:
　(1) The Court finds, in a hearing:
　　(A) Conducted outside the presence of the jury; and
　　(B) Attended by the child;

that the time, content, and circumstances of the statement or videotape provide sufficient indications of reliability; and
　(2) The child:
　　(A) Testifies at the trial; or
　　(B) Is found by the court to be unavailable as a witness because:
　　(i) A psychiatrist has certified that the child's participation in the trial would be a traumatic experience for the child;
　　(ii) A physician has certified that the child cannot participate in the trial for medical reasons; or
　　(iii) The court has determined that the child is incapable of understanding the nature and obligation of an oath.
(d) If a child is unavailable to testify at the trial for a reason listed in subsection (c)(2)(B), a statement or videotape may be admitted in evidence under this section only if there is corroborative evidence of the act that was allegedly committed against the child.
(e) A statement or videotape may not be admitted in evidence under this section unless the prosecuting attorney informs the defendant and the defendant's attorney of:
　(1) His intention to introduce the statement or videotape in evidence; and
　(2) The content of the statement or videotape; within a time that will give the defendant a fair opportunity to prepare a response to the statement or videotape before the trial.

mately convicted Miller of two counts of the lesser included offense of attempted child molesting and two counts of confinement. It acquitted her on one count of child molesting and two counts of battery. The court sentenced her to concurrent terms of ten years in prison on each count, with four years suspended on each of the attempted child molesting convictions and five years suspended on each conviction of confinement.

Miller argued on appeal that the admission of the videotaped statement violated the confrontation clauses of both the federal and state constitutions because A.M. was never subject to cross-examination. The Court of Appeals held that admission of the videotape was proper because the State had complied with the explicit requirements of the videotape statute, which had been found constitutional in *Altmeyer v. State* (1986), Ind.App., 496 N.E.2d 1328, *trans. denied,* and *Hopper v. State* (1986), Ind. App., 489 N.E.2d 1209, *cert. denied* — U.S. ——, 107 S.Ct. 592, 93 L.Ed.2d 593. *Miller v. State* (1986), Ind.App., 498 N.E.2d 1008. Miller's petition for transfer to this Court asserts that the Court of Appeals failed to consider whether the application of the statute in this case was constitutional.

We grant transfer to consider Miller's right of confrontation under the Indiana Constitution. Our analysis has five parts. First, we review the history of the confrontation right. Second, we determine what article 1, section 13 of the Indiana Constitution requires in regards to confrontation. Third, we examine the legislative history of Ind.Code § 35–37–4–6 to see if the legislature intended to provide for confrontation. Fourth, we review the facial validity of Indiana Code § 35–37–4–6. Fifth and finally, we judge the constitutionality of the statute as applied in this case.

## I. *The Origins of the Confrontation Right*

The confrontation right in seventeenth century English common law is said to have evolved from public backlash to the abuses which occurred during Sir Walter Raleigh's trial for treason in 1603. F. Hel-

ler, *The Sixth Amendment* 104 (1959). Raleigh's conviction rested in great part on a written confession given outside his presence by his alleged co-conspirator, who was not present at trial. The knight of muddied cape fame, who was not permitted counsel, implored the court for confrontation:

"The proof of the Common Law is by witness and jury; let Cobham [his alleged co-conspirator] be here, let him speak it. Call my accuser before my face, and I have done."

To which Judge Warburton responded:

"I marvel, Sir Walter, that you being of such experience and wit should stand on this point; for so many horse-stealers may escape, if they may not be condemned without witnesses."

K. Graham, *The Right of Confrontation and the Hearsay Rule: Sir Walter Raleigh Loses Another One,* 8 Crim.L.Bull. 99, 100 (1972).

The common law right of confrontation was planted firmly in the American colonies. Confrontation clauses were included in most of the first state constitutions adopted at the start of the Revolutionary War; those constitutions served as models for the United States Constitution and the Bill of Rights. R. Clinton, *The Right to Present A Defense: An Emergent Constitutional Guarantee in Criminal Trials,* 9 Ind.L.Rev. 711, 728 (1976). As with the common law confrontation right, the general purpose of these clauses was to prevent the trial of criminal cases upon affidavits. *See Kay v. United States,* 255 F.2d 476 (4th Cir.1958), *cert. denied,* 358 U.S. 825, 79 S.Ct. 42, 3 L.Ed.2d 65.

The right of confrontation became part of the United States Constitution through the Sixth Amendment: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...."

The historical record of the congressional debates on the Bill of Rights is meager. R. Clinton, *supra,* at 732–733. Even less is known of the individual states' deliberations on the amendments during ratification. *Id.* at 738. Courts and scholars

have generally concluded that the essential purpose of the federal confrontation right is to secure to the defendant the opportunity of cross-examination. *Pointer v. Texas* 380 U.S. 400, 404, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923, 926 (1965); F. Heller, *supra* p. 5, at 105; 5 J. Wigmore, *Evidence,* § 1395, at 150 (Chadbourn rev. 1974).

The Supreme Court has described the nature of confrontation at trial as:

a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief. *Mattox v. United States,* 156 U.S. 237, 242–243, 15 S.Ct. 337, 339, 39 L.Ed. 409, 411 (1895).

More recently, Justice Blackmun reminded us that: "These means of testing accuracy are so important that the absence of proper confrontation at trial 'calls into question the ultimate "integrity of the fact-finding process." ' " *Ohio v. Roberts,* 448 U.S. 56, 64, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597, 606 (1980) (citations omitted).

While Wigmore calls the witness' presence before the tribunal "a result accidentally associated with the process of confrontation," 5 J. Wigmore, § 1395, at 154, courts have tended to regard the jury's opportunity to view the demeanor of the witness as a critical component of the confrontation right. *Barber v. Page,* 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255, 260 (1968); *Sumpter v. State* (1974), 261 Ind. 471, 481, 306 N.E.2d 95, 102, *cert. denied,* 425 U.S. 952, 96 S.Ct. 1727, 48 L.Ed.2d 196. The Sixth Amendment right of confrontation is made obligatory on the states by the Fourteenth Amendment. *Pointer,* 380 U.S. at 407, 85 S.Ct. at 1069, 13 L.Ed.2d at 928.

■ The right of confrontation is not absolute. It "must occasionally give way to considerations of public policy and the necessities of the case." *Mattox,* 156 U.S.

at 243, 15 S.Ct. at 340, 39 L.Ed. at 411. The Supreme Court also noted that "technical adherence to the letter of a constitutional provision may occasionally be carried farther than is necessary to the just protection of the accused, and farther than the safety of the public will warrant." *Id.* at 243, 15 S.Ct. at 340, 39 L.Ed. at 411.

## II. *Indiana Confrontation Clause*

■ Criminal defendants in this state have an independent right of confrontation arising from article 1, section 13, of the Indiana Constitution. It provides: "In all criminal prosecutions, the accused shall have the right ... to meet the witnesses face to face...."

Like its federal counterpart, the Indiana confrontation clause reveals little about its framers' intent. The clause in its present form was part of Indiana's 1816 constitution. During the constitutional convention of 1850, the right to jury trial and the requirement of grand jury indictment sparked some debate and led to amendments. However, the substance of the right to confront witnesses "face to face" was never discussed. *See generally, Debates of Indiana Convention, 1850.*

Indiana courts have seldom been called upon to define the parameters of the state provision. Before *Pointer* established the applicability of the Sixth Amendment confrontation right to the states in 1965, confrontation questions were rarely raised on appeal in this state. Since *Pointer,* defendants in Indiana have presented their confrontation claims either solely on Sixth Amendment grounds or on both federal and state grounds. With few exceptions, Indiana appellate courts have analyzed these confrontation questions with reference to federal case law and treated the state provision as providing guarantees similar to its federal counterpart.

■ For instance, in *Lagenour v. State* (1978), 268 Ind. 441, 376 N.E.2d 475, this Court held that the right to confront witnesses granted by *both* the federal and state constitutions includes the right to full, adequate and effective cross-examina-

tion and declared this right fundamental and essential to a fair trial. In *Marjason v. State* (1947), 225 Ind. 652, 654, 75 N.E.2d 904, 905, we ruled, with regard to the Indiana right of confrontation: "Meeting the witnesses face to face must also include the right to cross-examine." While the Indiana courts have relied on *Ohio v. Roberts* in reviewing both state and federal confrontation claims, this action does not preclude us from forming an independent standard for analyzing claims under the Indiana confrontation clause.[2] References to federal authority notwithstanding, Indiana courts have clearly determined that cross-examination is the primary interest secured by the confrontation right in article 1, section 13 of the Indiana Constitution.

### III. *Legislative Intent*

■ In an effort to reduce trauma for child molesting victims in a manner which resolves both confrontation and hearsay problems,[3] all but a few states have recently enacted statutes which allow testimony by such children through videotaping or live broadcast over closed circuit television.

Such legislation has been prompted by the high numbers of cases involving sexual abuse of children and the difficulties inherent in successfully prosecuting them. The National Center on Child Abuse and Neglect has estimated that more than 100,000 cases of child sexual abuse occur annually, but other sources place the number as high as 500,000 for female children alone. Note, *A Comprehensive Approach to Children Hearsay Statements in Sex Abuse Cases*, 83 Colum.L.Rev. 1745 (1983).

Litigation of sexual abuse crimes involving children presents special problems.

The child victim is often the only eyewitness to the crime, and physical corroboration is rare because the sex offenses committed against children tend to be nonviolent: petting, exhibitionism, fondling, and oral copulation. *Id.* at 1749–1750. Physical corroboration also may be unavailable because most children do not resist out of ignorance or respect for authority. *Id.* at 1750 n. 46.

A single witness is sufficient for successful prosecution under most circumstances, but children are frequently reluctant and undependable witnesses. They may suffer extreme trauma or stress from their courtroom experience. Note, *Proving Parent–Child Incest: Proof at Trial Without Testimony in Court by the Victim*, 15 U.Mich. J.L.Ref. 131, 134 (1981). Some children, whether from embarrassment or fear, may refuse to discuss the attacks. For the same reasons, some parents attempt to impede the prosecution.

Perhaps the greatest weakness of children as prosecuting witnesses may be their susceptibility to leading questions and a tendency to tailor their answers "to appease the examining attorney." *Note*, 83 Colum.L.Rev. at 1752. It is easy to understand why problems surrounding the child's testimony are the most common reason for dismissal of child molestation cases. *State v. Sheppard*, 197 N.J.Super. 411, 417, 484 A.2d 1330, 1333 (Law Div.1984).

Legislation allowing the videotaped testimony of the child victim is intended to reduce trauma to the child and to facilitate successful prosecution of child molesters. At least thirty-four states allow the testimony of young victims to be videotaped before trial.[4] Twenty-three states allow

**2.** Under the *Ohio v. Roberts* test, admission of an out-of-court statement of a witness who does not testify at trial does not violate the Sixth Amendment if the witness is shown to be unavailable and the statement has adequate "indicia of reliability." 448 U.S. at 66, 100 S.Ct. at 2539, 65 L.Ed.2d at 608.

**3.** To a great extent, the hearsay rule and the confrontation clause are co-extensive because they both protect the opportunity for cross-examination. However, the Supreme Court continues to consider them separately, refusing to declare that one subsumes the other. *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).

**4.** Unable to locate a reference citing all of these statutes, we list them here. Alaska Stat. § 12.45.047 (1984); Ariz.Rev.Stat.Ann. § 13–4252, § 13–4253(B) (1986 Supp.); Ark.Stat. Ann. § 43–2036 (1985 Supp.); Cal. Penal Code § 1346 (West 1987 Supp.); Colo.Rev.Stat. § 18–3–413 (1986 Repl.); Conn.Gen.Stat.Ann. § 54–86g (West 1987 Supp.); Del.Code Ann. tit. 11, § 3511 (1986 Supp.); Fla.Stat. § 90.90

testimony over closed-circuit television for "live" presentation to the jury.[5] A majority of states permitting videotaped or closed-circuit testimony do not require the child to appear at trial if his out-of-court statement is admitted.

Although state statutes vary greatly, nearly all explicitly require that the defendant have an opportunity for cross-examination, either at trial or when the statement is made. Some states allow investigating officers or therapists to videotape a statement without the defendant present but permit admission of such statements only if the victim is available for cross-examination at trial.

The documented history of the Indiana statute, although lean, indicates the legislature intended that the hearing on the admissibility of the child victim's statement be adversarial in nature with full confrontation between defendant and victim. The legislature intended that the child testify during this hearing even if the child will be unavailable for trial.

When first introduced as a House bill, the statute did not explicitly require the child's attendance at the hearing to determine the admissibility of the statement. Staff of House Comm. on Courts and Criminal Code, 103rd General Assembly, 2d Session, Report on H.B. 1205, Ind. House Journal 128 (1984) (recommending addition of subsection (c)(1)(B), "Attended by the child"). In addition, the defendant had no explicit right to attend the hearing or be notified of it. The bill specified that the statement was not admissible unless the child testified at the hearing or was found to be unavailable for testimony at the hearing. Under this initial version, a statement could be admitted even if the child did not appear at the hearing or at trial.

Neither the House nor the Senate found this proposition tenable. The bill was amended to give the defendant notice and the right to attend the hearing. Staff of the Senate Comm. on Judiciary, 103rd General Assembly, 2d Session, Report on Engrossed H.B. 1205, Ind. Senate Journal 253 (1984) (recommending that subsection (c) be amended to require notice to defendant of hearing and right to be present). Furthermore, the bill was amended to specify that the statement was not admissible unless the child testified at trial or was found unavailable as a trial witness. *Id.;* Staff of House Comm. on Courts and Criminal

(1984); Rules 616, Hawaii Rules of Evidence, chapter 626, Hawaii Rev.Stat.; Ind.Code § 35–37–4–6 (Burns 1985 Repl.); Iowa Code § 910A.14 (1987 Supp.); Ky.Rev.Stat. § 421.350 (1986 Supp.); La.Rev.Stat.Ann. tit. 15, § 440.2–440.5 (1987 Supp.); Me.Rev.Stat.Ann. tit. 15, § 1205 (1986 Supp.); Mass.Gen. Laws Ann., ch. 278, § 16D (West 1987 Supp.); Minn. Stat. § 595.02 (West 1987 Supp.); Miss.Code Ann. § 13–1–407 (1987 Supp.); Mo.Ann.Stat. § 491.680 (Vernon 1987 Supp.); Mont.Code Ann. § 46–15–401 (1987); Nev.Rev.Stat. § 174.227 (1985); N.H.Rev.Stat.Ann. § 517.13–a (1986 Supp.); N.M.Stat.Ann. § 30–9–17 (1984 Repl.); N.Y.Crim.Proc. Law § 190.32 (McKinney 1987 Supp.); Ohio Rev.Code Ann. § 2907.41 (Page 1987 Supp.); Okla.Stat.Ann. tit. 22, § 753 (West 1987 Supp.); 42 Pa.Cons.Stat.Ann. § 5984 (Purdon 1987 Supp.); R.I.Gen. Laws § 11–37–13.2, § 40–11–7.2 (1987 Supp.); S.D. Codified Laws Ann. § 23A–12–9 (1987 Supp.); Tenn.Code Ann. § 24–7–116 (1987 Supp.); Tex. Crim.Proc.Code Ann. § 38.071 (Vernon 1987 Supp.); Utah Code Ann. § 77–35–15.5 (1987 Supp.); Vt.Stat.Ann. Rules of Evidence § 807 (1987 Supp.); Wis.Stat.Ann. § 967.04(7)–(10) (West 1986); Wis.Stat.Ann. § 908.08 (West 1987 Supp.). In addition, Idaho Code § 19–30–24 (1987 Supp.) contains broad language which may be construed to allow videotaped statements of child victims, although the word "videotape" is not used in the statute.

5. Ariz.Rev.Stat.Ann. § 13–4253(A) (1986 Supp.); Cal. Penal Code § 1347 (West 1987 Supp.); Conn.Gen.Stat.Ann. § 54–86g (West 1987 Supp.); Ga.Code § 17–8–55 (1987 Supp.); Rule 616, Hawaii Rules of Evidence, chapter 626, Hawaii Rev.Stat.; Ind.Code § 35–37–4–8 (Burns 1986 Supp.); Iowa Code § 910A.14 (1987 Supp.); Ky.Rev.Stat. § 421.350 (1986 Supp.); La.Rev. Stat.Ann. tit. 15, § 283 (1987 Supp.); Md.Cts. & Jud.Proc.Code Ann. § 9–102 (1987 Supp.); Mass.Gen.Laws.Ann., ch. 278, § 16D (West 1987 Supp.); Minn.Stat.Ann. § 595.02 (West 1987 Supp.); Miss.Code Ann. § 13–1–405 (1987 Supp.); N.J.Stat.Ann. § 2A:84A–32.4 (West 1987 Supp.); N.Y.Crim.Proc. Law § 65.10 (McKinney 1987 Supp.); Ohio Rev.Code Ann. § 2907.41 (Page 1987 Repl.); Okla.Stat.Ann. tit. 22, § 753 (West 1987 Supp.); 42 Pa.Cons.Stat.Ann. 5985 (Purdon 1987 Supp.); R.I.Gen. Laws § 11–37–13.2 (1987 Supp.); Tenn.Code Ann. § 24–7–116 (1987 Supp.); Tex.Crim.Proc.Code Ann. § 38.071 (Vernon 1987 Supp.); Utah Code Ann. § 77–35–15.5 (1987 Supp.); Vt.Stat.Ann. Rules of Evidence § 807 (1987 Supp.).

Code, *supra* at 128. The bill as amended required the child's testimony at either the hearing or the trial and provided for the defendant's presence at the hearing. After these amendments, the bill became law.[6]

Before these amendments, the child witness could be determined to be unavailable to testify at the hearing. A child unavailable for the hearing would likely be unavailable for trial as well. Thus, under the bill's original version, the child's testimony was not required at the hearing or at trial.

The House and Senate amendments left open the possibility that the child might be unavailable for trial, but they removed any explicit authority for the child to avoid testimony at the hearing. Moreover, unlike the original bill, the statute as adopted affords the defendant notice and the right to be present. These changes suggest that the legislature intended that the child testify at the hearing and be subject to cross-examination even if he will be unavailable for trial.

We agree with the Court of Appeals that the "purpose of [this] pre-trial hearing, with notice to the defendant and with the child present, is to give the defendant the right, under less traumatic circumstances than a trial, to inquire into the statement or ask the child questions about it." *Miller,* 498 N.E.2d at 1012. By enacting Ind.Code § 35-37-4-6, the legislature did not intend to restrict the defendant's right of cross-examination but only to require that it occur in an atmosphere less traumatizing to the child victim.

IV. *Constitutionality of the Statute*

Before we can review Miller's claim that Ind.Code § 35-37-4-6 was unconstitutionally applied in her case, we must determine whether the statute is facially valid. The Court of Appeals has ruled that Ind.Code § 35-37-4-6 is not unconstitutional *per se* under the Sixth Amendment and article 1, section 13 of the Indiana Constitution.

■ Legislation under constitutional attack in this Court is clothed in a presump-

tion of constitutionality. *Grassmyer v. State* (1981), Ind., 429 N.E.2d 248. The burden to rebut this presumption is upon any challenger, and all reasonable doubts must be resolved in favor of an act's constitutionality. *Bunker v. National Gypsum Co.* (1982), Ind., 441 N.E.2d 8. When a statute can be construed to support its constitutionality, such construction must be adopted. *B & M Coal Corp. v. United Mine Workers of America* (1986), Ind., 501 N.E.2d 401, *cert. denied,* —— U.S. ——, 107 S.Ct. 2183, 95 L.Ed.2d 839.

■ The confrontation rights granted by the Indiana Constitution and the federal Constitution may differ to some degree. The Indiana clause requires "face to face" confrontation, while the federal clause mandates only a general right "to be confronted with the witnesses". This Court has held that the preliminary hearing testimony of a witness unavailable at trial is admissible under the Indiana Constitution if at that preliminary hearing the defendant either cross-examined the witness or *had the opportunity* to do so. *Wilson v. State* (1911), 175 Ind. 458, 93 N.E. 609. The U.S. Supreme Court has raised that question in the context of the Sixth Amendment but has yet to answer it. *Ohio v. Roberts,* 448 U.S. at 70, 100 S.Ct. at 2541, 65 L.Ed.2d at 610. Of course, the "face to face" language in the Indiana clause, as in other states, has not always been interpreted literally. Otherwise, the testimony of all absent witnesses, whether unavailable through death or illness or threat, would never be admissible at trial.

■ The legislature's objective in enacting Ind.Code § 35-37-4-6—reducing the trauma for child victims in sexual abuse cases and easing the task of prosecuting the perpetrators, while preserving the defendant's right to confrontation—is consistent with the purpose of the state and federal confrontation clauses. The statute provides for videotaped testimony only when the trial court finds, in a hearing involving the defendant and the victim, that the

---

6. The original statute did not explicitly provide for admission of *videotaped* statements. A 1985 amendment to Ind.Code § 35-37-4-6 specifical-

ly authorized their use. 1985 Ind. Acts, P.L. 316, § 1.

statement has sufficient indications of reliability. The child must also testify at trial or be found by the court to be unavailable as a witness. Unavailability may be predicated only upon doctors' certifications or a court finding that the child is legally incompetent.[7] Finally, the statute requires that other evidence corroborate the crime. It also requires the defendant have a fair opportunity to prepare a response to the statement before trial.

We conclude that the statute provides adequate assurance of the reliability of the child victim's statement. The defendant is not deprived of his right to cross-examine but, rather, required to exercise it in an atmosphere less traumatizing to the victim. Although the statute does not explicitly provide that a child declared unavailable for trial may be cross-examined before trial, the legislative history and the implicit meaning of the statutory language show that was the intent.

The statute does not unduly inhibit the defendant's right of cross-examination and provides adequate safeguards to protect against the admission of unreliable hearsay. We conclude that Ind.Code § 35–37–4–6 is not unconstitutional *per se* under either the Sixth Amendment or article 1, section 13 of the Indiana Constitution.

### V. *Application of the Statute*

■ We now turn to Miller's claim that the statute was applied in a manner inconsistent with the Sixth Amendment and article 1, section 13 of the Indiana Constitution. She asserts that application of the statute resulted in an unjustified deprivation of her confrontation right.

Of the five challenges to Ind.Code § 35–37–4–6 already heard in the Court of Appeals, only one questioned the introduction of a videotaped statement of a child victim never subjected to cross-examina-

tion. In that case, the Court was unable to provide an answer because of an inadequate record. *Altmeyer*, 496 N.E.2d 1328. The other four decisions have focused on the facial validity of the statute. *Hopper*, 489 N.E.2d 1209; *Stahl v. State* (1986), Ind.App., 497 N.E.2d 927; *Miller*, 498 N.E. 2d 1008; *Dayton v. State* (1986), Ind.App., 501 N.E.2d 482.

Although the admission of a child's videotaped statement has not been considered by this Court, both this Court and the Court of Appeals have addressed similar questions in determining that a defendant has the right to attend the deposition of a witness who will not be testifying at trial. *Bowen v. State* (1975), 263 Ind. 558, 334 N.E.2d 691; *Gallagher v. State* (1984), Ind. App., 466 N.E.2d 1382.

In *Gallagher*, the Court of Appeals found no error in the defendant's absence from a deposition requested by the defense. The deposition in *Gallagher* was not taken to preserve testimony for trial. The Court went on to say:

> We believe, although it is unnecessary for us to decide, that when the state takes a witness' deposition to perpetuate the testimony for use at trial, the defendant and his counsel should be given notice of the deposition and an opportunity to confront and cross-examine the witness. If this procedure is followed the trend is to allow the deposition to be admitted at trial as substantive evidence if the witness is unavailable. Indeed, we believe that the admission of a deposition at trial which was taken in the absence of the defendant *or* his counsel could be so fundamentally unfair as to violate the defendant's due process rights.

466 N.E.2d at 1385 (citations omitted).

In *Bowen*, the defendant sought to depose the State's witnesses before his trial for kidnapping and sodomizing two chil-

---

7. At first glance, it may appear inconsistent that one of the admissibility requirements for the child's statement may be met by showing that the child does not understand the significance of truthfulness. However, as the Court of Appeals noted in *Hopper*, a witness' legal incompetency merely affects the admissibility of his in-court testimony and does not bar admission of his out-of-court statements. 489 N.E.2d at 1212, n. 4. The additional requirement in Ind. Code § 35–37–4–6 that the statement show adequate indicia of reliability ensures that the statement of an incompetent child will not be admitted absent compelling proof that the statement is truthful.

dren, ages seven and ten. The Court granted Bowen's request but ordered that the deposition be taken outside his presence. On direct appeal, the defendant argued that his absence violated the Indiana confrontation clause. This Court disagreed:

> That provision of our constitution which guarantees an accused the right "to meet the witnesses face to face," is applicable to those criminal proceedings in which the accused may be condemned to suffer grievous loss of either his liberty or his property. The taking of a deposition cannot directly have such consequences upon an accused, although a trial may ... and a parole revocation may.... Hence, there was no violation of Article 1, section 13 in denying the appellant the right to be present at the depositions.

263 Ind. at 564, 334 N.E.2d at 695.

In *Bowen*, the deposed witnesses were cross-examined both at the deposition and at trial. The defense stated explicitly that the deposition was merely a vehicle for "intensive discovery." In the case at bar, the videotaped statement substituted for the victim's testimony at trial. Considering the critical nature of A.M.'s statement in relation to Miller's conviction, the videotaping session was certainly "a criminal proceeding in which the accused may be condemned to suffer grievous loss of either his liberty or property." *Id.* 334 N.E.2d at 695.

Of course, use of the statements in *Bowen* and *Gallagher* did not depend upon a later hearing on admissibility as required under Ind.Code § 35–37–4–6 and the confrontation which would occur during such a hearing. For purposes of this case, this distinction leads us to regard *Bowen* and *Gallagher* as standing for the broad proposition that a defendant must have an opportunity for cross-examination before the out-of-court testimony of an absent witness is admissible at trial. In light of *Bowen* and *Gallagher* and our recognition that cross-examination is at the core of the Indiana confrontation clause, it is clear that use of a statement videotaped under Ind.Code § 35–37–4–6 must be accompanied by some opportunity for cross-examination if it is to comply with the Indiana Constitution.

The foundation for an effective balance between the rights of the child victim and those of the defendant has been laid through the enactment of Ind.Code § 35–37–4–6. Use of the victim's statement without the opportunity for cross-examination, however, was at variance with both the legislature's intent and our Constitution. The goal of the statute is to reduce the child's emotional trauma caused by numerous court appearances, not to guarantee that the child will never have to face the defendant. Even against the pressure of policies favoring specialized treatment of child victims, the confrontation clause in article 1, section 13 of the Indiana Constitution does not permit wholesale denial of cross-examination.

■ We reject the State's claim that Miller had the opportunity to cross-examine the victim at the December 5 hearing and that her failure to call the child as a witness amounted to a waiver of her right to confrontation. The judge indicated he would not allow the attorneys to question the victim when she took the stand or submit questions for the court to pose. Presumably, he had decided to question the child himself to determine the child's competency, an appropriate method under Indiana case law. The judge's responses to the attorneys, however, were so broad as to be interpreted as a general ban on questioning by counsel.

■ The defendant was never affirmatively given the opportunity to question the victim. There is a presumption against the waiver of constitutional rights. For a waiver to be effective, there must be "an intentional relinquishment or abandonment of a known right or privilege." *Hartman v. State* (1973), 155 Ind.App. 199, 205, 292 N.E.2d 293, 297, quoting *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Such proof of affirmative waiver, even if it were sufficient for reversal, does not exist here.

■ Although a violation of the confrontation clause may constitute harmless

error, *Brewster v. State* (1983), Ind., 450 N.E.2d 507, that is not the case here. The videotaped statement of the victim constituted particularly damaging evidence. No other direct evidence linked Annabel to the molestations, although the medical evidence made clear that the molestations had occurred. The child's testimony on the videotape was straightforward and convincing. It can hardly be claimed that the central evidence against the defendant was harmless.

The General Assembly's objective in adopting Ind.Code § 35–37–4–6, protecting children who suffer the tragedy of sexual abuse, is altogether important and appropriate. We reject appellant's contention that the statute is unconstitutional. We do hold that the victim's testimony can be admitted only if the defense has had the opportunity for cross-examination.

The judgment of the trial court is reversed and this case remanded for a new trial.

DeBRULER, GIVAN and DICKSON, JJ., concur.

PIVARNIK, J., dissents and would deny transfer.