**Annabel MILLER, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1–1285A327.**

Court of Appeals of Indiana, First District.

Oct. 23, 1986.

Rehearing Denied Dec. 4, 1986.

---

Susan K. Carpenter, Public Defender, Margaret S. Hills, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

NEAL, Judge.

### STATEMENT OF THE CASE

Defendant-appellant, Annabel Miller (Annabel), was charged in the Pike Circuit Court with an eleven-count Information as follows: Count I, child molesting, a Class B felony, by aiding Michael Miller, Sr., to perform the act of sexual intercourse with A.M., age 4; Count II, child molesting, a Class B felony, by aiding Michael Miller, Sr., to perform an act of sexual intercourse with A.M., age 5; Count III, child molesting, a Class B felony, by aiding Berry Altmeyer to perform an act of sexual intercourse with A.M., age 5; Count IV, child molesting, a Class B felony, by aiding Ralph A. Miller to perform an act of sexual intercourse with A.M., age 5; Count V, incest, a Class D felony, by aiding Michael

Miller, Sr., to engage in sexual intercourse with A.M., his stepdaughter; Count VI, incest, a Class D felony, by aiding Ralph A. Miller to perform an act of sexual intercourse with A.M., his step-grandchild; Count VII, incest, a Class D felony, by aiding Michael Miller, Sr., to engage in sexual intercourse with A.M., his stepchild; Count VIII, confinement, a Class C felony, by confining A.M., age 4, her grandchild; Count IX, confinement, a Class C felony, by confining A.M., her grandchild; Count X, battery, a Class D felony, by striking the hand of A.M. with a knife; and Count XI, battery, a Class D felony, by touching A.M.'s finger with a burning cigarette. Annabel was convicted by the Pike Circuit Court in a trial without a jury in Count I of the lesser included offense of attempted child molesting; in Count III, guilty of the lesser included offense of attempted child molesting; in Counts VIII and IX, guilty as charged; Counts V, VI and VII were dismissed before trial, and she was acquitted on Counts IV, X and XI. She was sentenced to 10 years, four suspended on each of Counts I and III; she was sentenced to 5 years on each of Counts VIII and IX. All sentences were ordered to be served concurrently. From these sentences she appeals.

## STATEMENT OF THE FACTS

A.M. was born on April 15, 1975. Her natural mother is Kathleen Strain. Her father is Michael Miller, Sr., who is in his thirties. Her grandparents are Ralph Miller and Annabel Miller, who are in their sixties. Berry Altmeyer who is about thirty-seven, is the son-in-law of Annabel.[1] These people all lived with each other at one time or another, and together with other children of the group. Annabel had physical custody of A.M. Michael, Ralph and Berry were all charged in separate informations with molesting A.M. by having sexual intercourse with her over a period of three or four years. The essence of all of the charges against Annabel is that she aided

those defendants to commit their offenses. The State claims that all four adults participated in sex acts, in groups and in pairs, or singularly, which included the above charged molestations.

Other facts will be developed as relevant to the issues.

## ISSUES

Annabel presents four issues for review as follows:

   I. Whether the trial court erred in admitting the video taped statement of the victim into evidence.

   II. Whether the trial court erred in excluding from evidence the medical report of Dr. Calderazzo, based upon the Rape Shield Statute.

   III. Whether the trial court erred in finding Annabel Miller guilty because there was insufficient evidence to support the verdict.

   IV. Whether the trial court erred in finding Annabel Miller guilty because the evidence failed to establish venue and the specific dates of the offenses charged.

## DISCUSSION AND DECISION

ISSUE I: *Video Taped Statement*

Annabel was formally charged on May 25, 1984, after which the initial hearing was conducted on June 4, 1984. On November 9, 1984, the State filed a petition under IND. CODE 35–37–4–6 to admit into evidence the video taped statements of A.M., which were material. The State alleged that A.M. was 9 years-old, and that A.M.'s participation in the trial would be traumatic for her.

IND. CODE 35–37–4–6, as enacted in 1984, provides as follows:

"Admissibility of statement of a child of ten or under in certain criminal actions.—

---

1. There are some discrepancies in the record of the exact relationship. It is not clear whether Michael Miller, Sr. is A.M.'s father or stepfather, or whether Ralph A. Miller was the grandfather or step-grandfather. It is not relevant for the purposes of this opinion.

(a) This section applies to criminal actions for the following:

(1) Child molesting (IC 35–42–4–3).

(2) Battery upon a child (IC 35–42–2–1(2)(B)).

(3) Kidnapping (IC 35–42–3–2).

(4) Confinement (IC 35–42–3–3).

(b) A statement that:

(1) Is made by a child who was under ten (10) years of age at the time of the statement;

(2) Concerns an act that is a material element of an offense listed in subsection (a) that was allegedly committed against the child; and

(3) Is not otherwise admissible in evidence under statute or court rule; is admissible in evidence in a criminal action for an offense listed in subsection (a) if the requirements of subsection (c) are met.

(c) A statement described in subsection (b) is admissible in evidence in a criminal action listed in subsection (a) if, after notice to the defendant of a hearing and of his right to be present:

(1) The court finds, in a hearing:

(A) Conducted outside the presence of the jury; and

(B) Attended by the child;

that the time, content, and circumstances of the statement provide sufficient indications of reliability; and

(2) The child:

(A) Testifies at the trial; or

(B) Is found by the court to be unavailable as a witness because:

(i) A psychiatrist has certified that the child's participation in the trial would be a traumatic experience for the child;

(ii) A physician has certified that the child cannot participate in the trial for medical reasons; or

(iii) The court has determined that the child is incapable of understanding the nature and obligation of an oath.

(d) If a child is unavailable to testify at the trial for a reason listed in subsection (c)(2)(B), a statement may be admitted in evidence under this section only if there is corroborative evidence of the act that was allegedly committed against the child.

(e) A statement may not be admitted in evidence under this section unless the prosecuting attorney informs the defendant and the defendant's attorney of:

(1) His intention to introduce the statement in evidence; and

(2) The content of the statement;

within a time that will give the defendant a fair opportunity to prepare a response to the statement before the trial. [P.L. 180–1984, Sec. 1.]"

The record shows that a jury had not been waived at the time the petition was filed. The petition was set for hearing on December 5, 1984, and notice of that hearing was given to counsel for Annabel. Thereafter, on November 26, 1984, the State, by a child welfare caseworker and a police officer, interrogated A.M. on video tape. No notice of that taping session was given to either Annabel or her attorney, nor were they present. That tape is the one in issue here. It was the principal subject of the December 5 hearing and was later admitted into evidence at the trial. It is the sole evidence that linked Annabel to any of the acts of child abuse. No transcript of the tape is in the record, but we have viewed it. The tape shows the following.

A.M. testified in somewhat narrative form that Annabel, on numerous occasions, took her to the bedroom of Annabel's home where A.M. lived, pulled down her panties, told Michael and Ralph to pull down their pants, held A.M., pulled her legs apart, and the men, alternatively, got on top of her. A.M. could see their bare sexual organs, but it was not clear if they penetrated her. At such times, Annabel put vaseline on A.M.'s private parts. Annabel, on one occasion, tried to put a baby bottle in her vaginal tract, and once brought a dog to have sex with A.M., which act failed. The dog licked the other participants between their legs in her presence. A.M. escaped Annabel on one occasion. Annabel once burned A.M. with a cigarette, and on anoth-

er occasion rapped her finger with a knife, telling A.M. not to tell of the activities. These acts commenced near A.M.'s fifth birthday and continued over a course of time.

A.M. was present at the December 5 hearing but remained outside the court room. The testimony reflected that A.M. was under the age of ten years. A psychiatrist testified that an appearance at trial would be a traumatic experience for the child. The evidence corroborating the acts of molestation given at that hearing was other prior similar statements and a history contained in a psychiatric report which was elicited from A.M. These included statements and histories by other female children in the family that had been molested.

The psychiatrist testified that A.M. was capable of understanding the oath. The trial court interrogated A.M. on the record on the matter of telling the truth. A.M. knew right from wrong, and knew it was wrong to lie. She knew she could get into trouble for lying. She also understood the nature of the proceeding. No questions were asked of A.M., nor was any request made to the court for permission to ask A.M. any questions by Annabel's attorney. The court found that A.M. was unavailable as a witness in the trial because such participation would be a traumatic experience for the child. The court found that the prior statements provided a sufficient indication of reliability and ordered the November 26, 1984, statement admitted into evidence.

Annabel attacks the admissibility of the video tape on four grounds. We will treat them in order.

■ A. *Constitutionality.* Annabel argues that the admission of the video tape in lieu of A.M.'s actual testimony at trial deprived her of fundamental rights under the sixth amendment to the Constitution of the United States and article I, sec. 13 of the Constitution of Indiana to confront and cross-examine witnesses. In the same argument she claims that because of her and her counsel's absence from the taping session, she was denied effective assistance of counsel. This argument seemingly proceeds on the basis that the statute, IND. CODE 35–37–4–6, recited in full above, is unconstitutional. The statute does not provide for notice to a defendant as to when a statement is taken, nor does it limit the statement to any particular means of preservation, i.e. video tape, audio tape, written statement, or mere recital of an oral statement.

The purpose of the statute is to create a vehicle in molestation cases whereby a very young child's testimony can be submitted at trial without subjecting the child to a further harmful ordeal. Additionally, it aids the State in presenting evidence. Experienced persons are aware of the extreme difficulty in proving child abuse where the victim, sometimes the only witness, is very young. As seen, safeguards were provided to insure reliability. We perceive that the purpose of a pre-trial hearing, with notice to the defendant and with the child present, is to give the defendant the right, under less traumatic circumstances than a trial, to inquire into the statement or ask the child questions about it. Thus, corroboration is provided. This procedure was followed and the child was actually put on the witness stand. However, the record is devoid of any effort on Annabel's part to interrogate her.

We are of the opinion that the issue of constitutionality was determined adversely to Annabel in *Altmeyer v. State* (1986), Ind.App. 496 N.E.2d 1328; and *Hopper v. State* (1986), Ind.App., 489 N.E.2d 1209, *trans. denied. Altmeyer* is a companion case to the case at bar. No good purpose would be served by repeating the analyses contained therein, but the reader is directed to them for further edification.

B. *Reliability.* Annabel contends that there is not a sufficient indication of reliability, nor was there corroborative evidence. She also argues that the statement was made pursuant to interrogation and lacked spontaneity.

■ The statute does not provide, nor are there any Indiana cases which provide,

a standard by which the requirement of sufficient indicia of reliability can be measured. Other states have addressed the problem. For example, the court in *State v. Myatt* (1985), 237 Kan. 17, 697 P.2d 836, held that in determining reliability and trustworthiness, a court should consider (1) the age of the child; (2) his or her mental or physical condition; (3) the circumstances of the alleged event; (4) the language used by the child; (5) the presence of corroborative physical evidence; (6) the relationship of the accused to the child; (7) the child's family, school, and peer relationships; (8) any motive to falsify or distort the event; and (9) the reliability of the witness being examined.

In addition to the facts shown above, which were addressed at the hearing, it is clear that the various statements which A.M. made to officers were consistent, and consistent with the medical histories. At trial it was shown by medical testimony that A.M. had been subjected to repeated acts of vaginal penetration, consistent with penile penetration. Her condition was described as similar to a woman who was sexually active. We are of the opinion that the determination of reliability and corroboration is a matter of fact to be determined by the trier.

Subsection (d) permits the statement to be admitted into evidence "only if there is corroborative evidence of the *act* that was allegedly committed against the child." (Emphasis added.) We view corroboration here to serve the same purpose as the requirement that independent corroborative proof of the corpus delicti be introduced before a confession is admitted. The phrase simply requires corroboration that the *"act"* was committed by someone. This result is compelled by the emphasis on the act, rather than any mention of the defendant. Here Annabel concedes that the medical testimony revealed repeated molestations over a course of time. Such is sufficient corroborative evidence.

Annabel also contends that the video taped statement was obtained from A.M. by impermissible leading questions which suggested the answers. Annabel concedes that a certain amount of leading questions are proper where a child is the witness. *Johnson v. State* (1977), 265 Ind. 689, 359 N.E.2d 525. She correctly argues that leading questions are not proper if they fail to "elicit coherent testimony" and tend to "control the substance of the testimony." *Ingram v. State* (1984), Ind.App., 463 N.E.2d 483, 485. She claims that the leading questions here went beyond those boundaries. As noted, we have viewed the tape. Admittedly, leading questions were utilized in places. Nevertheless, it was clear that the interrogators were careful, and, in our opinion, did not overstep proper bounds. The answers were sufficiently spontaneous.

Annabel argues that the statement was taken long after the last alleged act of molestation, and therefore is not subject to the same hearsay exception rule which was the subject of *Ohio v. Roberts* (1980), 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597; *Hopper, supra.* Those cases involved spontaneous declarations, contemporaneous with the act, which were a part of the res gestae, an exception to the hearsay rule. Those cases did not limit the rule to exceptions to the hearsay rule. Any statement will suffice. There is no requirement that the statement be made contemporaneous with the act.

C. *Statute Not in Effect.* Annabel argues that the statute was not in effect on November 26, 1984, and did not go into effect until September 1, 1985. IND. CODE 35–37–4–6, quoted above in full, was enacted in 1984, and went into effect September 1, 1984. It was amended in 1985, but the amendments added only (a)(5), rape, (a)(6), criminal deviate conduct, and (b), and in other places, the section was amended to read "a statement or *video tape.*" (Our Emphasis.) Prior to this statute the use of video tape as statements was approved by our supreme court. *Coleman v. State* (1984), Ind., 465 N.E.2d 1130; *Bennett v. State* (1981), Ind., 423 N.E.2d 588; *Smith v. State* (1979), 272 Ind. 328, 397 N.E.2d 959; *Lamar v. State* (1972), 258

Ind. 504, 282 N.E.2d 795. We are of the opinion that a statement is a statement, and the means of recording it, via either video tape, audio tape, or writing, is immaterial to that meaning. In *Hopper, supra,* the statement was not recorded at all. There was merely testimony of it. In this regard, the 1985 amendment added nothing to the section of the law. We find no error.

ISSUE II: *Sufficiency of the Evidence*

■ Annabel concedes that A.M. was sexually molested by someone. She argues that the record, however, aside from the inconsistent video taped testimony of A.M., is absolutely devoid of direct evidence connecting Annabel with the allegations of sexual abuse.

We have already decided that the video tape was properly admitted and is probative evidence. We have already decided that the acts were sufficiently corroborated by the medical testimony. We find that the evidence is sufficient.

ISSUE III: *Exclusion of Evidence*

■ Dr. Calderazzo made a physical examination of A.M. on July 21, 1983. He testified that A.M. had been subjected, over a course of three or four years, to repeated acts of vaginal penetration consistent with penile penetration. During his examination, he took a history. His report stated that only Michael Miller, Sr., Ralph Miller and Berry Altmeyer were involved, but did not mention any participation by Annabel. The report was offered on cross-examination as impeachment of A.M., but upon objection, was excluded by the court. In its ruling the court mentioned the rape shield law. However, Dr. Calderazzo was permitted to testify that Annabel's name was not mentioned in the history or report. A state's witness, a child welfare worker, conceded that the welfare department first became aware of the allegations against Annabel on February 2, 1984. Until that time A.M. had only implicated Michael Miller, Sr., Berry Altmeyer and Ralph Miller. Annabel contends that the absence of allegations against her in the July 21, 1983,

history and report is evidence of her innocence and the court erred in excluding it.

We are of the opinion that any error was harmless, for the information was before the court, and Annabel was not prejudiced by the court's ruling.

ISSUE IV. *Venue*

■ Annabel finally argues that the State failed to prove venue in Pike County. A.M. testified that 11 of the acts took place in Annabel's home in the bedroom or bathroom. There was evidence that the home was in Otwell. Lisa Berry, a Pike County Department of Public Welfare caseworker, testified that Annabel lived at R.R. # 1, Otwell, and A.M. lived with her. Annabel's daughter, Carol Huckelby, testified that she also lived with Annabel in Otwell. Mail to them was addressed R.R. # 1, Otwell. The Pike County Department of Public Welfare took jurisdiction of the case because of child abuse. Lisa Berry, the caseworker, testified that Annabel lived *in* Otwell at the time in question.

Proof of venue is satisfied by a preponderance of the evidence. *Hatton v. State* (1982), Ind., 439 N.E.2d 565. The State's burden is satisfied if, when looking at the evidence and reasonable inferences to be drawn therefrom which support the finding of venue, there is evidence of probative value from which the trier could reasonably infer that venue has been proven. Venue can be proven by circumstantial evidence.

In *Weaver v. State* (1963), 243 Ind. 560, 187 N.E.2d 485, our supreme court stated that evidence that the defendant

"had taken a five year old girl between here and Linwood which we judicially know is in Madison County,"

was sufficient proof of venue. Likewise, we can judicially know that Otwell is in Pike County. We hold that the evidence, circumstantially, is sufficient to prove venue. Other cases where circumstantial evidence was held sufficient to prove venue are: *Morris v. State* (1980), 274 Ind. 161, 409 N.E.2d 608; *Sizemore v. State* (1979), 272 Ind. 26, 395 N.E.2d 783; *Perry v. State* (1971), 255 Ind. 623, 266 N.E.2d 4. We find no error.

For the above reasons, this cause is affirmed.

Judgment affirmed.

ROBERTSON, P.J., and RATLIFF, J., concur.