**STATE of Indiana, Appellant
(Plaintiff Below),**

v.

**David S. PETRY, Appellee
(Defendant Below).**

No. 48A02–8703–CR–90.

Court of Appeals of Indiana,
Second District.

June 22, 1988.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, C. Robert Rittman, Sp. Prosecutor, Marion, for appellant.

Earl C. Townsend, Jr., Townsend Yosha & Cline, Indianapolis, April Hansen, Parr Richey Obremskey & Morton, Lebanon, J. Bayne Burton, Anderson, for appellee.

SHIELDS, Presiding Judge.

The State of Indiana appeals a pre-trial determination that a videotaped interview of the alleged child molestation victim is inadmissible under IC 35-37-4-6 (Burns Supp.1987).[1]

We affirm.

### ISSUE

Whether the trial court erred in entering the following order:

(1) Is made by a child who was under ten (10) years of age at the time of the statement or videotape;

(2) Concerns an act that is a material element of an offense listed in subsection (a) that was allegedly committed against the child; and

(3) Is not otherwise admissible in evidence under statute or court rule; is admissible in

---

1. Admissibility of statement or videotape of a child of ten or under in certain criminal actions.—(a) This section applies to criminal actions for the following:

(1) Child molesting (IC 35-42-4-3).

. . . . .

(b) A statement or videotape that:

The issue before the Court is whether a videotape interview of [S.] taken by Detective Dale Koons is admissible pursuant to I.C. 35–37–4–6. After conducting a hearing in this matter, the Court took the issue under advisement to enable counsel to file briefs with the Court. The Court has read the briefs and has viewed the videotape interview. The Court finds no corroborative evidence of the act that was allegedly committed against the child. The video interview is not admissible pursuant to I.C. 35–37–4–6.[2]

## FACTS

David S. Petry was charged with two counts of child molesting on June 4, 1985. The alleged victim was Petry's son, S. The molestations allegedly occurred between June 15, 1980, and July of 1983, when S. was between the ages of two and five.

On October 9, 1986, the State filed a "Notice of Intent to Invoke I.C. 35–37–4–6 and to Admit Video Taped Statement of [S.] without calling said child as a result of unavailability." A hearing was held on December 8, 1986, as required by IC 35–37–4–6. Dr. Weinbaum, a psychiatrist appointed by the court to conduct a psychological evaluation of S., and Cindy Rice, a social worker, testified.

In Weinbaum's opinion, S. had been "sexually misused." Record at 96. Weinbaum testified that he based his opinion on a brief initial interview with S., psychological tests run on S. by his staff, a private interview he conducted with S. for several hours, and an informal interview with S.'s mother. Weinbaum also viewed the disputed videotape after interviewing S. Weinbaum testified that he found "[S.'s] ... defenses, his anxiety, his withdrawal, his discomfort with the situation, ... his ability to talk about the sexual experiences to be *consistent with* a child who has been sexually abused." Record at 92 (our emphasis). Weinbaum stated that S. "talked

evidence in a criminal action for an offense listed in subsection (a) if the requirements of subsection (c) are met.

(c) A statement or videotape described in subsection (b) is admissible in evidence in a criminal action listed in subsection (a) if, after notice to the defendant of a hearing and of his right to be present:

(1) The court finds, in a hearing:

(A) Conducted outside the presence of the jury; and

(B) Attended by the child;

that the time, content, and circumstances of the statement or videotape provide sufficient indications of reliability; and

(2) The child:

(A) Testifies at the trial; or

(B) Is found by the court to be unavailable as a witness because:

(i) A psychiatrist has certified that the child's participation in the trial would be a traumatic experience for the child;

(ii) A physician has certified that the child cannot participate in the trial for medical reasons; or

(iii) The court has determined that the child is incapable of understanding the nature and obligation of an oath.

(d) If a child is unavailable to testify at the trial for a reason listed in subsection (c)(2)(B), a statement or videotape may be admitted in evidence under this section only if there is corroborative evidence of the act that was allegedly committed against the child.

(e) A statement or videotape may not be admitted in evidence under this section unless the prosecuting attorney informs the defendant and the defendant's attorney of:

(1) His intention to introduce the statement or videotape in evidence; and

(2) The content of the statement or videotape; within a time that will give the defendant a fair opportunity to prepare a response to the statement or videotape before the trial.

2. We note the statute expressly requires a hearing only for the purpose of determining sufficient indicia of reliability. Assuming a determination that indicia of reliability exists, the admissibility of the statement depends upon subsequent events: the child testifying at trial or a determination the child is unavailable to testify for certain enumerated reasons. If the child is unavailable, admissibility of the statement is further conditioned upon the foundation of evidence corroborating the act allegedly committed against the child.

Here, the record reveals the parties elected to follow an alternative and preferred path by seeking a pre-trial determination of the corroboration requirement. Although the ruling when requested by the State is only advisory, in the same sense as a motion in limine, and not the basis of error, the procedure does avoid the delay occasioned if the question is first raised during trial. Its use is recommended.

about sexual behaviors engaged in with his father." Record at 103.

Weinbaum also testified that he had not formed a conclusion prior to viewing the videotape, and that the videotape played a part in his judgment. Weinbaum clarified this remark: "During the initial examination I thought sure that it was ... uh, that he was a child who'd been sexually abused. Uh, I didn't feel as strongly that it was by his father until after I saw the tape." Record at 111–12. Weinbaum further opined there were many things other than sexual abuse which may cause a small child to be anxious and shy.

The second witness at the hearing was Cindy Rice, a staff therapist at the Center for Mental Health in Madison County, who saw S. twice a month from March 28, 1985 to January, 1986. Rice testified that S. showed symptoms of "post traumatic stress syndrome":

> "[S.] was showing extreme fearfulness of adults. Uh, if I would ask him certain questions that made him uncomfortable he would climb under the chair or he would walk out of the room. These would just be some ... some simple kinds of questions, but he was very guarded and very fearful. He seemed to be extremely shy for a child his age. Uh, he did not like to answer any kinds of questions no matter how joyful or playful they might be. He did not have any spontaneity. He appeared to be, uh very fearful and that he had very poor eye contact. He had no affect; did not show any emotions."

Record at 129. Rice said she had never asked S. if he had been sexually abused, but S. told her his father does "bad things" to him. Record at 130. Rice testified that S. feared coming to court for hearings and started wetting his bed after he began therapy with her approximately nine months after the last time he saw his father. Rice also said the symptoms present in post traumatic stress *"can appear in any disorders."* Record at 140 (our em-

phasis). Rice said S.'s condition had worsened by the time she quit seeing him. Rice concluded that, in her opinion, S. was sexually abused.

The trial court required S.'s presence in the courtroom during the hearing, but S. did not testify. The only other witness was Detective Koons who testified regarding the procedures he used in conducting the videotaped interview with S. The court concluded the videotape was inadmissible for lack of corroborative evidence under IC 35–37–4–6. This interlocutory appeal ensued.

## DECISION

### Standard of Review

■ The trial court determined the State did not provide corroborative evidence of the act and the videotape is therefore inadmissible. While this court has found that corroboration under IC 35–37–4–6 is "a matter of fact to be determined by the trier," *Miller v. State* (1986), Ind.App., 498 N.E.2d 1008, 1013, Indiana decisions have not articulated our standard of review. As a rule, the sufficiency of a foundation for the admissibility of evidence is a matter addressed to the sound discretion of the trial court and its decision will be reversed only for an abuse of that discretion, *i.e.* only when the trial court's decision is clearly erroneous and against the facts and circumstances or reasonable inferences to be drawn therefrom. *Sutton v. State* (1981), Ind.App., 422 N.E.2d 430, 431. We specifically adopt this traditional abuse-of-discretion-test for reviewing rulings on the admissibility of evidence under IC 35–37–4–6.

### Indiana Cases Dealing With IC 35–37–4–6

Because child hearsay statutes are a relatively recent legislative response to growing concerns about child abuse, it is appropriate to review our caselaw. Indiana courts have dealt with the new child hearsay statute in nine cases, but in none of

those was corroboration directly at issue.[3] In fact, corroboration is not mentioned in four of the cases.[4] Nevertheless, it is helpful to look at the kinds of corroborative evidence implicitly found to be sufficient under the statute in the five remaining cases.

In *Dayton v. State* (1986), Ind.App., 501 N.E.2d 482, this court affirmed the constitutionality of IC 35-37-4-6 against a claim the defendant's Sixth Amendment rights to confrontation were violated by admission of an alleged child abuse victim's out of court statements. Although the issue of corroboration under IC 35-37-4-6 was not directly raised, the State established a "prima facie case" through evidence that the child had bruises after being in the care of the defendant. *Id.* at 484, fn. 3. Thus, there was physical corroborative evidence.

In *Miller v. State* (1986), Ind.App., 498 N.E.2d 1008, this court specifically addressed the requirement of "corroborative evidence of the act that was allegedly committed against the child" under subsection (d) of IC 35-37-4-6. The court stated:

We view corroboration here to serve the same purpose as

the requirement that independent corroborative proof of the corpus delicti be introduced before a confession is admitted. The phrase simply requires corroboration that the *"act"* was committed by someone. This result is compelled by the emphasis on the Act, rather than any mention of the defendant. Here Anabel concedes the medical testimony revealed molestations over a course of time. Such is sufficient corroborative evidence.

*Id.* at 1013. The corroborative evidence consisted of medical testimony that the child had been subjected to repeated acts of vaginal penetration.

On transfer, in *Miller,* our Supreme Court upheld the constitutionality of the Indiana child hearsay statute, interpreting the statute as requiring that the defendant have the opportunity to cross-examine the child victim. *Miller v. State* (1987), Ind., 517 N.E.2d 64. Although the court mentioned the statutory requirement of corroborative evidence, the context of the statement indicates only that the corroborative evidence must consist of evidence other than the videotape. In analyzing the legislative intent behind the statute, the court noted, "[p]hysical corroboration may also be unavailable because most children do not resist out of ignorance or respect for authority." *Id.* at 69. Although *Miller* does not define the perimeters of corroboration under the statute, it suggests that it is not limited to physical evidence.

In *Altmeyer v. State* (1986), Ind.App., 496 N.E.2d 1328, this court remanded the cause to the trial court with instructions to enter specific findings of fact and conclusions of law concerning the reliability of the videotaped statement of the alleged child victim. The court noted that these findings were to be limited to the circumstances surrounding the giving of the statement, and not to the corroborating evidence, since corroborating evidence is an additional requirement under IC 35-37-4-6.

In *Hopper v. State* (1986), Ind.App., 489 N.E.2d 1209, this court held a child's hearsay statements admissible under the statute as excited utterances, thus sufficiently

---

**3.** *Harp v. State* (1988), Ind.App., 518 N.E.2d 497; *Miller v. State* (1987), Ind., 517 N.E.2d 64; *Matthews v. State* (1987), Ind., 515 N.E.2d 1105; *Altmeyer v. State* (1986), Ind.App., 496 N.E.2d 1328; *Hutchison v. State* (1987), Ind.App., 511 N.E.2d 1; *Dayton v. State* (1986), Ind.App., 501 N.E.2d 482; *Miller v. State* (1986), Ind.App., 498 N.E.2d 1008; *Stahl v. State* (1986), Ind.App., 497 N.E.2d 927; *Hopper v. State* (1986), Ind.App., 489 N.E.2d 1209.

**4.** (1) *Harp v. State,* (since defendant had been given the opportunity to cross-examine, right to

confrontation was not violated); (2) *Matthews,* (statutory hearsay exception applies only to children under ten years of age); (3) *Hutchison,* (defendant waived issue of child victim's competency at trial by claiming at a prior hearing that the child could understand the oath for purpose of objecting to admission of child's statement under IC 35-37-4-6); (4) *Stahl,* (defendant incorrectly asserts that IC 35-37-4-6 only applies to excited utterances of child victim; notice of use of videotape was adequate).

reliable. The court further held the State presented corroborating evidence of the act in the form of testimony of two witnesses. The witnesses had seen the partially-clad child lying next to the defendant and their subsequent examination of the child revealed reddening around the opening of her vagina.

In sum, the Indiana decisions concerning the child hearsay statute implicitly acknowledge that evidence of physical injury or contact may be corroborative, but offer us limited guidance in defining the perimeters of corroboration.

### Washington Cases

The Indiana child hearsay statute, enacted in 1984, was modeled after the Washington Statute, enacted in 1982.[5] As in Indiana, the Washington statute requires a showing of unavailability if the child is excused from testifying at trial and requires corroboration of the abusive act. Unlike in Indiana the corroboration requirement has received significant judicial attention in Washington.

In *State v. Gitchel* (1985), 41 Wash.App. 820, 706 P.2d 1091, the Washington Court of Appeals upheld the trial court's determination that the evidence corroborated the child's hearsay statements. The court referred not only to evidence of physical abuse, i.e., a doctor's finding of partial vaginal penetration, but also to the child's inappropriate behavior during the doctor's examination, and the child's nightmares. Thus the court acknowledged that psychological manifestations of abuse may be corroborative, at least when combined with physical evidence.

This point was directly addressed in Justice Utter's concurring opinion in *State v.*

*Doe* (1986), 105 Wash.2d 889, 719 P.2d 554, 558. He said the corroborative evidence requirement under the child hearsay statute "is satisfied by indirect evidence, as well as direct evidence, of the offending act." Justice Utter concluded that corroboration can include "expert testimony on whether the victim's behavior is typical of children who have been sexually abused." *Id.*

The most thorough examination of the corroboration requirement to date was given in *State v. Hunt* (1987), 48 Wash.App. 840, 741 P.2d 566. In *Hunt,* evidence of the child's behavior at her day care facility met the corroboration requirement. Witnesses described instances of explicit sexual conduct by the child at the day care, as well as unusual naptime and toilet behavior. The State's expert witness declined to rule out explanations other than sexual abuse but stated that explicit sexual behavior in children is generally a "learned activity." The expert expressed concern " 'that [the victim] has been exposed to in some way to some aspect of adult sexuality' and possibly to sexual abuse." *Id.* at 568. However, the *Hunt* court specifically declined to determine whether this evidence, standing alone, was sufficient, since there was additional corroborative evidence. The additional corroborative evidence was testimony regarding the child's play with anatomically correct dolls (which the court deemed a combination of nonassertive verbal and nonverbal conduct and therefore not hearsay). Thus *Hunt* does not resolve the issue of whether or to what extent expert testimony fulfills the corroboration requirement.

*Hunt* does provide guidance, though, in defining corroboration for purposes of the

---

5. A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings ... if:

 (1) The court finds, in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and

 (2) The child either:
 (a) Testifies at the proceedings; or
 (b) Is unavailable as a witness: *Provided,* That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act....
RCW 9A.44.120 (West 1988).

hearsay exception. Acknowledging that in most cases of child sexual abuse there is no physical evidence or eyewitness, *Hunt* follows the concurrence in *Doe*, 719 P.2d 554, in stating that the corroboration requirement encompasses both direct and indirect evidence. Further, citing the Indiana case of *Miller*, 498 N.E.2d 1008, the *Hunt* court found the corroboration requirement "*analogous*" to the rule requiring independent corroborative proof of the corpus delicti prior to admission of a confession...." *Hunt*, 741 P.2d at 571 (our emphasis). The corroboration requirement was defined as " 'evidence of sufficient circumstances which would support a logical and reasonable inference' that the act of abuse described in the hearsay statement occurred." *Id.* at 571–72, quoting *Bremerton v. Corbett* (1986), 106 Wash.2d 569, 578, 723 P.2d 1135, 1140.

The Washington Court of Appeals extended its *Hunt* analysis in *State v. Jones* (1988), 50 Wash.App. 709, 750 P.2d 281. In *Jones*, the corroborative evidence offered by the State included evidence about the victim's nightmares and behavioral changes and testimony by three other people that the defendant had requested or engaged in the same kind of activity with them. The trial court rejected this evidence at a pretrial suppression hearing on grounds that the testimony of similar activities would be inadmissible at trial, and the behavioral evidence, alone, was inadequate to satisfy the statutory requirement.

Unfortunately for our purposes, the appellate court addressed only the issue of the admissibility of the prior criminal activity. The appellate court reversed the trial court on the grounds that regardless of whether the evidence of similar activities might be inadmissible at trial because the trial court might determine its prejudicial effect outweighed its probative value, it properly could be considered as corroborative evidence at a pretrial hearing.

The court stated:

Corroborative evidence can include any evidence, outside of the complainant's testimony itself, which has probative value—any evidence which could convince the trier of fact that the crime was committed, ... and which tends to connect the defendant to the crime.

*Id.*, 750 P.2d at 282 (citations omitted).

We note that the Washington statute, like the Indiana statute, requires corroboration only of the act. *Jones* clearly follows the *Hunt* reasoning in holding that any relevant evidence supporting a logical and reasonable inference that the act occurred, even if indirect or circumstantial, may be corroborative evidence under the child hearsay statute. *Jones*, 750 P.2d at 282–83.[6]

## CONCLUSION

Initially, we observe that once the confrontation issue was resolved in *Miller*, 517 N.E.2d 64, the child hearsay statute is unremarkable. It merely adopts an "indicia of reliability" hearsay exception, already judicially recognized in this state and an exception to the well established law in this state that the uncorroborated testimony of the victim is sufficient to sustain a conviction. This state now requires corroboration to sustain a conviction of certain enumerated offenses if the victim is a child under ten years of age who does not personally testify in open court at the trial.

"To corroborate" means:

To strengthen; to add weight or credibility to a thing by additional and confirming facts or evidence. The testimony of a witness is said to be corroborated when it is shown to correspond with the representation of some other witnesses, or to comport with some facts otherwise known or established.

*Black's Law Dictionary* 311 (5th ed., 1979). Corroboration is a broader term

---

**6.** Child hearsay statutes from other states that require corroboration include those from: Colorado, South Dakota, Minnesota and Utah. Our research has revealed no cases in these states where the only corroborating evidence was the testimony of a psychiatrist or social worker with no physical evidence of injury or contact. *See People v. Mathes* (1985), Colo.App., 703 P.2d 608; *State v. Spronk* (1985), S.D., 379 N.W.2d 312.

than corpus delicti since the latter refers to the "body or substance of the crime, which ordinarily includes two elements: the act and the criminal agency of the act." *Id.* at 310. Thus "corroboration" and "corpus delicti" are not synonymous. As observed by this court in *Miller,* 498 N.E.2d at 1013, however, they serve the same purpose—to prevent the danger of falsification. Corroboration may consist of any evidence which, within the bounds of relevancy, tends to make the occurrence of the act in question more probable. We do not believe, therefore, that corroboration under IC 35–37–4–6 must be confined to evidence of a physical, as opposed to psychological, nature. As stated by Chief Justice Shepherd in *Miller:*

> Litigation of sexual abuse crimes involving children presents special problems. The child victim is often the only eyewitness to the crime, and physical corroboration is rare because the sex offenses committed against children tend to be nonviolent: petting, exhibitionism, fondling, and oral copulation.... Physical corroboration also may be unavailable because most children do not resist out of ignorance or respect for authority.

*Miller,* 517 N.E.2d at 69 (citations omitted). We do not hold such evidence necessarily constitutes the required corroborative evidence. Rather, our holding is that a trial court may, in the sound exercise of its discretion, based upon an adequate record, find that psychological evidence, standing alone, does provide the necessary foundation for the admission of an alleged child victim's statement under the child hearsay statute.

On the other hand, several reasons exist why the trial court may find such evidence, standing alone, fails to provide the necessary corroboration. For example, the trial court may be dissatisfied with the expert's qualifications, his credibility, or the nature and extent of his examination.

In this case, a psychiatrist and a social worker testified that, in their respective opinions, S. had been sexually abused. Their opinions were based on S.'s behavior exhibiting certain symptoms. Dr. Weinbaum first testified as to symptoms that may or may not be present in victims of sexual molestation. He then described symptoms exhibited by S. that were consistent with S. having been sexually abused. Cindy Rice, a social worker, testified that S. exhibited symptoms of post traumatic stress syndrome. She stated those symptoms "can appear in any disorders" (Record at 140) and that "symptoms of sexual abuse will be similar to any kind of trauma to a child emotionally, so the two cannot really be discerned differently." Record at 122. Both witnesses relied on essentially the same symptoms in stating their opinion S. had been sexually abused.

██ Based upon this evidence, the trial court's decision is not clearly erroneous and against the facts and circumstances and reasonable inferences to be drawn therefrom. Dr. Weinbaum's testimony was devoid of any evidence of the acceptance and reliability of his statement that children subjected to sexual abuse exhibit symptoms in common. This omission is emphasized by Cindy Rice's testimony that substantially the same symptoms are exhibited in any number of disorders. She also stated a child who has been traumatized by an event other than sexual abuse will exhibit symptoms similar to the child traumatized by sexual abuse to the extent that the two cannot be distinguished. Based upon this evidence, the trial court's determination the particular psychological evidence was not of sufficient weight to constitute the required corroboration was not an abuse of discretion.

Therefore, the interlocutory order is affirmed and cause remanded for further proceedings.[7]

MILLER and SULLIVAN, JJ., concur.

---

7. The trial court required S. to be present in the    courtroom during the hearing, but S. was not

cross-examined. We direct the parties to *Miller,* 517 N.E.2d 64. In *Miller,* our supreme court held the victim's statement could not be used without the opportunity for cross-examination. The defendant in *Miller* did not waive her constitutional right of confrontation because, "The defendant was never *affirmatively* given the opportunity to question the victim." *Id.* at 73 (our emphasis). Our supreme court cited *Hartman v. State* (1973), 155 Ind.App. 199, 205, 292 N.E. 2d 293, 297, quoting *Johnson v. Zerbst* (1938), 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, for the proposition that, "For a waiver to be effective, there must be 'an intentional relinquishment or abandonment of a known right or privilege.'" The *Hartman* court (citing *Johnson*) also stated, "'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and ... we 'do not presume acquiescence in the loss of fundamental rights.'"

The language of *Miller,* as emphasized by reference to *Hartman,* leaves the question of whether the defendant's failure to call the child

to testify is a waiver of the right of confrontation. If it is not, the trial court must affirmatively give the defendant this opportunity, presumably by giving an instruction to that effect. This analysis is supported by the most recent case from this court on IC 35–37–4–6, *Harp v. State* (1988), Ind.App., 518 N.E.2d 497. The *Harp* court, in explaining *Miller,* referred to the trial court's failure to "*offer* the defendant the opportunity to cross-examine" and the determination that "Miller had never *affirmatively* been given the opportunity for cross-examination." *Id.* (our emphasis).

Although the confrontation issue was not raised in this appeal, on remand the trial court and the parties are advised to consider the *Miller* precedent. In addition, we direct the attention of the trial court to *Altmeyer,* 496 N.E.2d 1328, which requires special findings of fact and conclusions of law on the indicia of reliability issue.