**In the Matter of Mark A. BECK, Child Alleged to be Delinquent, Appellant (Respondent Below),**

v.

**STATE of Indiana, Appellee.**

**No. 48A02–8811–JV–00447.**

Court of Appeals of Indiana, Second District.

Oct. 4, 1989.

James D. Gillespie, Anderson, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

Mark Beck (respondent) was charged with touching T.P., a three year-old child, with a sponge [1] and with his penis on her vaginal area with the intent to arouse or satisfy his sexual desire. The respondent was adjudged to be a delinquent child on August 4, 1987, and was ordered to the Indiana Boys School. Respondent appeals this determination.

We reverse.

There are essentially two issues presented for review:

(1) Whether the defendant's sixth amendment right to cross-examination was violated, and

---

**1.** We note that there was no evidence as to any touching by respondent with a sponge, even in the child's videotaped statement; this portion of the charge should therefore have been stricken.

(2) Whether there was sufficient corroborative evidence to render the videotaped statement admissible under I.C. 35–37–4–6.

Respondent was 16 years of age when he was charged with the above offense, which allegedly occurred on March 9, 1987. T.P.'s mother, Elizabeth Cooley, had taken T.P. and T.P.'s younger sister over to Evelyn Edwards' house, with whom respondent was then living, to be babysat while Cooley attended school. Cooley testified that Beck was asleep on the couch when she arrived. After telling Edwards that she was dropping the kids off, Cooley left for school. Although unclear, the facts most favorable to the judgment would permit an inference that respondent was left alone with the two girls, as well as Edwards' own two children, for an undisclosed period of time while Edwards was absent from the house.

According to Cooley, T.P. was crying when she later picked her up and complained of hunger and of pain in her vaginal area. After asking T.P. what was wrong, Cooley visually examined the child, then called her neighbor over to also examine T.P. Apparently the only thing unusual which they discovered was a white substance, later identified at the hospital as a piece of sponge. Although the record is unclear as to the exact time frame of these events, apparently several hours had passed before the neighbor, Carla Rogers, was called. T.P. was subsequently taken to the hospital that evening for an examination.

A videotaped statement of T.P. was taken by Detective Conce on the third day following the alleged incident pursuant to I.C. 35–37–4–6 (Burns Code Ed.Supp.1988).

This statute allows out-of-court statements by children to be admitted provided certain criteria are met. This statute reads in part as follows:

"Admissibility of statement or videotape of a child of ten or under in certain criminal actions.[2]—(a) This section applies to criminal actions for the following:

(1) Child molesting (IC 35–42–4–3).

\*　　\*　　\*　　\*　　\*　　\*

(b) A statement or videotape that:

(1) Is made by a child who was under ten (10) years of age at the time of the statement or videotape;

(2) Concerns an act that is a material element of an offense listed in subsection (a) that was allegedly committed against the child; and

(3) Is not otherwise admissible in evidence under statute or court rule; is admissible in evidence in a criminal action for an offense listed in subsection (a) if the requirements of subsection (c) are met.

(c) A statement or videotape described in subsection (b) is admissible in evidence in a criminal action listed in subsection (a) if, after notice to the defendant of a hearing and of his right to be present:

(1) The court finds, in a hearing:

(A) Conducted outside the presence of the jury; and

(B) Attended by the child;

that the time, content, and circumstances of the statement or videotape provide sufficient indications of reliability; and

(2) The child:

(A) Testifies at the trial; or

---

**2.** The trial court ruled at the May 15, 1987, initial hearing that I.C. 35–37–4–6 applies to a delinquency proceeding in which the juvenile is charged with an act that, if committed by an adult, would be child molesting under I.C. 35–42–4–3(b):

"Now the … Statute is written to apply to criminal actions, that issue has been presented to this Court before and this Court has ruled … that … this particular section should apply to delinquency actions as well, so, under sub-section (a) of Section 6, the State meets that requirement as this delin-

quency charge is one of Child Molesting pursuant to I.C. 35–42–4–3 …." Record at 84. Appellant did raise a hearsay objection at the initial hearing (Record at 109) but this objection consisted of defense attorney's contention that I.C. 35–37–4–6 was unconstitutional as applied. Appellant did not contend at trial and does not now contend that the statute itself did not apply to a juvenile proceeding. Accordingly, we do not decide whether I.C. 35–37–4–6 is applicable in a delinquency proceeding nor whether or not the appellant's hearsay objection should have been sustained.

(B) Is found by the court to be unavailable as a witness because:

(i) A psychiatrist has certified that the child's participation in the trial would be a traumatic experience for the child;

(ii) A physician has certified that the child cannot participate in the trial for medical reasons; or

(iii) The court has determined that the child is incapable of understanding the nature and obligation of an oath.

(d) If a child is unavailable to testify at the trial for a reason listed in subsection (c)(2)(B), a statement or videotape may be admitted in evidence under this section only if there is corroborative evidence of the act that was allegedly committed against the child."

This tape included a demonstration by T.P. with anatomically correct dolls.

On May 15, 1987, a hearing was held to consider whether the tape contained sufficient indicia of reliability to be introduced as evidence and also to consider whether T.P. was available to testify; i.e., to determine whether or not she understood the nature and obligation of the oath. Respondent was seated at the back of the courtroom; T.P. apparently had her back to respondent. After inquiry by the judge and both attorneys, the court determined that T.P. was in fact not available to testify. The child was then allowed to leave without objection, while the hearing as to the statement's reliability continued. Detective Conce testified at this hearing as to his background with respect to child abuse cases and the technique he employed in taping the statement.

At the subsequent fact-finding hearing held on July 2 for the purposes of presenting substantive evidence and determining whether corroborative evidence as required by I.C. 35–37–4–6(d) existed, the doctor who conducted the medical examination testified that he had found no physical evidence to corroborate the charge. The doctor testified that the exam was normal, except for a small foam rubber particle which he found but he declined to speculate as to the source of the particle's presence. The doctor himself found the particle not unusual as children "often put things down there." Record at 164. The doctor was permitted to testify, over objection, to the child's explanation of what had happened. A copy of the medical exam containing the child's narrative was also introduced under the medical records exception over defendant's objection. The doctor stated that the findings of no trauma or scratches to the vaginal area were not inconsistent with the history given him by the child, because the type of contact described by T.P. would not leave any external signs.

The tape was admitted into evidence over defendant's sixth amendment objection.

## ISSUE I

 Respondent contends on appeal that he was denied his sixth amendment right[3] to confront and cross-examine the child. The state contends that respondent waived this right because he never asserted it. This issue must be decided in the context of two recent Indiana Supreme Court decisions, *Miller v. State* (1987) Ind., 517 N.E.2d 64 (*Miller I*) and *Miller v. State* (1988) Ind., 531 N.E.2d 466 (*Miller II*).

In *Miller I*, the defendant was accused of molesting her grandchild over a period of several years (apparently beginning when the child was 5; she was 9 at the time of trial). The defendant and her counsel were not notified of nor present at the videotaping of the child's statement. An initial hearing was held in which the child's competency and availability as a witness and the admissibility of the videotaped state-

3. The U.S. Supreme Court has held that the sixth amendment right to confrontation is applicable to juvenile proceedings such as the present one, where the consequences of the proceeding might be involuntary commitment to a state institution. *In re Gault* (1967) 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527. For purposes of this opinion, the right to confrontation and the

right of cross-examination shall be referred to inter-changeably. We recognize, however, that the rights are not identical. *Coy v. Iowa* (1988) —— U.S. ——, 108 S.Ct. 2798, 101 L.Ed.2d 857. *Cf. Brady v. State* (1989) 3d Dist. Ind.App., 540 N.E.2d 59 (Hoffman, J. dissenting), *trans. pending.*

ment were determined. The trial court determined that the child was unavailable to testify at trial. Our Supreme Court rejected the state's claim that the defendant had waived the opportunity to cross-examine the victim at the hearing and that her failure to call the child as a witness amounted to a waiver of her right to confrontation. The court pointed out that the trial judge had indicated he would not allow the attorneys to question the victim when she took the stand for purposes of determining her competency or to submit questions for the court to pose, presumably because the judge was going to question the child himself. Our Supreme Court determined that the judge's responses to the attorneys were sufficiently broad as to be interpreted as a general ban on questioning by counsel, stating that

> "[t]he defendant was never affirmatively given the opportunity to question the victim. There is a presumption against the waiver of constitutional rights. For a waiver to be effective, there must be 'an intentional relinquishment or abandonment of a known right or privilege.' *Hartman v. State* (1973), 155 Ind.App. 199, 205, 292 N.E.2d 293, 297, quoting *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)."

*Miller I, supra,* 517 N.E.2d at 73. Our Supreme Court agreed with the First District[4] that the purpose of the pre-trial hearing is to give the defendant the right, under circumstances less traumatic to the child than a trial, to inquire into the statement or ask the child questions about it. The court stated that "[t]he goal of the statute is to reduce the child's emotional trauma caused by numerous court appearances, not to guarantee that the child will never have to face the defendant." *Id.*

After examining the evidence to determine whether the confrontation clause violation constituted harmless error, the court concluded it did not. The court stated that the child's testimony on the videotape was straightforward and convincing, and thus

constituted particularly damaging evidence because no other direct evidence linked the defendant to the molestations. The judgment was therefore reversed and the case was remanded for a new trial.

In *Miller II, supra,* 531 N.E.2d 466, our Supreme Court reaffirmed that the hearing held to determine whether the out-of-court statements contain sufficient indicia of reliability to be admissible is intended to be adversarial and to provide the defendant with the opportunity for full cross-examination. The court found that the right to fully confront and cross-examine the witness was one of three[5] core statutory requirements which must be met before the pre-trial statement of a child victim who cannot testify at trial can be used against the accused at trial.

In *Miller II,* the defendant similarly had not been given notice of nor was present at the taping of the three-year old child's statement. Instead of conducting a separate hearing pursuant to subsection (c) of the child hearsay statute to determine the competency of the child and the admissibility of the statement, the trial court conducted an in-camera hearing outside of the presence of the defendant, by stipulation of the parties, at the time of trial to determine the child's competency. Defense counsel was permitted the opportunity to question the child at the hearing, but declined. The court found her to be incompetent and the child did not testify at trial. The trial court admitted the taped statement over defendant's objection.

Our Supreme Court held that the appellant was not provided an adequate opportunity to cross-examine the child. The court stated that "an admissibility hearing attended by the child victim and for which provision has been made for the attendance of the accused and his counsel, and at which the accused is afforded full right to cross-examine and confront the witness," should have been held. *Id.* at 470. "This would include the opportunity for a physi-

---

4. *Miller v. State* (1986) 1st Dist. Ind.App., 498 N.E.2d 1008.

5. The second core requirement is the determination of the statement's reliability and the third core requirement is the finding of corroborative evidence.

cal, immediate face-to-face confrontation." *Id., citing Coy v. Iowa* (1988) — U.S. —, 108 S.Ct. 2798, 101 L.Ed.2d 857.

*Miller I* might here be distinguished and a waiver found in the instant case on the basis that T.P., the child victim, was present at the pre-trial hearing (at least while her competency was being determined), was questioned by the defense counsel as to her competency without any interference by the judge, and was allowed to leave before the statement's reliability was determined without objection by defense counsel or request by defense counsel that he be allowed to cross-examine her as to the substance of her statement.

*Miller II* might also be distinguished upon the basis that here, a hearing separate from the trial was held to determine whether the statement would be admissible (albeit that the hearing was also held to determine the child's competency) and defense counsel failed to assert his right to question her at this time. However, the tenor of our Supreme Court's opinion in *Miller II* persuades us that a knowing, intentional waiver did not occur. Defense counsel in neither case affirmatively requested the opportunity to question the child about the statement, although both objected to the statements on the basis of a violation of sixth amendment rights. It is clear that the hearing at which T.P.'s competency and the reliability of her statement were determined did not comply with the hearing requirements described in the *Miller II* opinion. There was no face-to-face confrontation, nor did the court affirmatively give defense counsel an opportunity to question her as to her competency. We therefore hold that the defendant did not waive his right to cross-examination. We further hold, as in *Miller I,* that the violation of this right was not harmless error. As in *Miller I,* the videotaped statement of the victim constituted the only direct evidence linking the respondent to the molestation.

### ISSUE II

■ Even were we to hold that the respondent had waived his sixth amendment

right, we would still be required to reverse due to the absence of corroborative evidence as required by I.C. 35–37–4–6 (Burns Code Ed.Supp.1988). The statute allows a videotaped statement of a child witness to be admitted at trial, even though it would not otherwise be admissible, where the trial court has determined that the time, contents and circumstances of the videotaped statement provide sufficient indications of reliability. I.C. 35–37–4–6. These indicia of reliability are required whether or not the child testifies at trial. I.C. 35–37–4–6(c). Where the child has been determined to be unavailable to testify at trial, as here, the videotaped statement may only be admitted "if there is corroborative evidence of the act that was allegedly committed against the child." I.C. 35–37–4–6(d). Thus, the corroboration requirement is separate from the reliability requirement and evidence going to support the reliability of the statement does not necessarily provide corroborative evidence of the act alleged in the statement. *See e.g., State v. Petry* (1988) 2d Dist.Ind.App., 524 N.E.2d 1293; *Altmeyer v. State* (1986) 1st Dist.Ind.App., 496 N.E.2d 1328, 1331.

We note that in *Miller II, supra,* 531 N.E.2d 536, our Supreme Court held that physical evidence corroborative of vaginal penetration does not provide evidence of the reliability of the statement. It would seem that conversely evidence leading to a reasonable conclusion that the statement is reliable is not sufficient to constitute corroboration that the alleged act occurred.

The standard of review here is that used for any question concerning sufficiency sufficiency of a foundation for the admissibility of evidence—namely, an abuse-of-discretion test. *Petry, supra,* 524 N.E.2d 1293, 1296. In the present case the court found sufficient corroborative evidence to support admitting the child's videotaped statement from the child's complaint to her parent close to the time of the alleged incident, coupled with the child's subsequent trip to the hospital and the history given to the physician. We hold this to be an abuse of discretion.

The court allowed the doctor to testify as to T.P.'s narration of the events over defense counsel's objection.

A medical history, even though hearsay, might form the basis of a medical opinion but such history may not be used as proof of the fact or facts contained in the history given by the patient. *C.T.S. Corp. v. Schoulton* (1978) 270 Ind. 34, 383 N.E.2d 293. Physicians are permitted to testify as to statements made to them by one who makes them for the purpose of securing diagnosis and treatment; not to establish the truth of the statements made. Such statements are relevant to the basis of the doctor's opinion.[6] *City of Anderson v. Borton* (1961) 132 Ind.App. 684, 178 N.E.2d 904; *Cerra v. McClanahan* (1967) 141 Ind. App. 469, 229 N.E.2d 737. Any facts within a medical history *given by the patient* are not admissible as substantive evidence. *Payne v. State* (1987) 2d Dist.Ind.App., 515 N.E.2d 1141.[7] It was error for the court to have considered the child's narrative statement to the doctor as corroborative evidence. This is not to say the trial court erred in considering the evidence purely because it was hearsay and inadmissible. In *State v. Jones* (1989) 112 Wash.2d 488, 772 P.2d 496, the Washington Supreme Court held that testimony by three other witnesses that defendant enjoyed the sexual practice of urolagnia and the four-year old victim's precocious knowledge of the acts constituted sufficient corroborative evidence. The court stated that the urolagnial evidence was competent corroborative evidence despite the fact that it may not be admissible at trial because a trial court is not bound by the Rules of Evidence when it

determines questions concerning the admissibility of evidence. We need not here decide whether hearsay evidence may be considered by the trial judge to provide corroborating evidence of the act of molestation as required by I.C. 35–37–4–6. In this case the hearsay of the child contained in the doctor's testimony is not corroborative because it is not *independent* evidence tending to prove that a molestation occurred. It is instead only further evidence of the child's own statement and is cumulative. Thus we are left with the question whether the child's complaints alone constitute sufficient corroborative evidence.

Corroborative evidence is not defined in the statute. Black's Law Dictionary defines "corroborating evidence" as:

> "Evidence supplementary to that already given and tending to strengthen or confirm it. Additional evidence of a different character to the same point." *Black's Law Dictionary* 311 (5th Ed., 1979).

To "corroborate" is defined as

> "To strengthen; to add weight or credibility to a thing by additional and confirming facts or evidence. The testimony of a witness is said to be corroborated when it is shown to correspond with the representation of some other witnesses, or to comport with some facts otherwise known or established." *Id.*

The First District in *Miller v. State* (1986) 1st Dist.Ind.App., 498 N.E.2d 1008, 1013, viewed the corroboration requirement as serving "the same purpose as the requirement that independent corroborative

---

**6.** The opinion testimony of the doctor here does not have substantial probative value due to its speculative nature. When asked his overall impression, the doctor stated "I wrote, suspected child molestation." Record at 164. This "opinion" merely confirms the reason why the child was brought in for the exam. *Cf. Noblesville Casting Division of TRW, Inc. v. Prince* (1982) Ind., 438 N.E.2d 722; *Watson v. Medical Emergency Services* (1989) 2d Dist. Ind.App., 532 N.E.2d 1191, *trans. denied.*

**7.** A more liberal federal rule is discussed in *U.S. v. Iron Shell* (1980) 8th Cir., 633 F.2d 77, *cert. denied* (1981), 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203. The rule would permit declara-

tions as to cause but generally not fault or identity. However, some courts have extended the rule further and permitted physicians to testify as to statements revealing the identity of the abuser on the theory that identity is relevant to proper diagnosis and treatment. *See, e.g., State v. Robinson* (1987) 153 Ariz. 191, 735 P.2d 801. Other courts have refused to allow physicians to testify as to the child's statements absent evidence that the child was capable of recognizing the need to provide accurate information for purposes of medical diagnosis or treatment at the time statements were made. *See, e.g., Oldsen v. People* (1986) Colo., 732 P.2d 1132.

proof of the corpus delicti be introduced before a confession is admitted. The phrase simply requires corroboration that the 'act' was committed by someone." However, in *State v. Petry, supra,* 524 N.E.2d 1293, 1300, we found corroboration to be a broader term than corpus delicti, although it served the same purpose, i.e., prevention of the danger of falsification. *Petry* was the first Indiana case to look closely at the requirement of corroborative evidence. Our District in *Petry* concluded that corroboration could consist of any evidence which, within the bounds of relevancy, tends to make the occurrence of the act in question more probable.

The Washington Appellate Court in *State v. Hunt* (1987) 48 Wash.App. 840, 741 P.2d 566, found that an identical requirement of "corroborative evidence of the act" in Washington's child hearsay statute required that there be "evidence of sufficient circumstances which would support a logical and reasonable inference that the act of abuse described in the hearsay statement occurred." *Id.,* 741 P.2d at 571–572. According to the Washington Supreme Court in *State v. Jones, supra,* 772 P.2d 496, this requirement requires a balancing of the statute's goal of making child victim hearsay more readily available as evidence, against the concern that use of such hearsay should not create too great a risk of an erroneous conviction. Finally, in *State v. Allen* (1988) 157 Ariz. 165, 755 P.2d 1153, the Arizona Supreme Court distinguished corroborative evidence from cumulative evidence, noting that to be corroborative, the evidence must be separate and apart from that already given and tend to strengthen or confirm the matter corroborated, whereas cumulative evidence merely augments or tends to establish a point already proved by other evidence.

In *Ketcham v. State* (1959) 240 Ind. 107, 162 N.E.2d 247, the mother of a five-year old testified as to the alleged rape of her daughter, as related to her by the child. The child did not testify at trial. The court stated that in a sexual crime, the complaint by the victim is competent evidence but the complaint may not consist of a narrative of the happening. In allowing the mother to testify, the court was faced with prior decisions which had stated in dicta that a complaint is not admissible unless the prosecuting witness also testifies, since it must corroborate the witness. This reasoning was based upon the conclusion that a complaint was corroborative of the testimony of the victim. Our Supreme Court disapproved this conclusion, however, finding that the complaint was really corroboration of the occurrence itself, rather than the testimony of the victim.

Although this statement gives us pause, we do not construe it to refer to the type of corroborative evidence of the act that was contemplated by the legislature when it drafted subsection (d) of the child hearsay statute. As explained in *State v. J.S.* (1988) 222 N.J.Super. 247, 536 A.2d 769, the admission of the complaint originally was not intended to either bolster the victim's credibility nor corroborate the alleged offense. The purpose of the fresh complaint rule was to allow the state to meet in advance the negative inference which would be drawn from the absence of evidence that the victim reported the incident to one to whom she would naturally turn for comfort and advice. Thus the credibility of the witness was protected from unfair attack. Given the rule's limited purpose and the *Ketcham* court's dilemma in admitting evidence of the complaint where the child was not available to testify, we do not believe it contradictory to hold that while T.P.'s complaints may have constituted sufficient indicia of reliability they did not constitute the independent corroborative evidence contemplated under our statute.

By requiring corroborative evidence whenever the child was not available to testify, the legislature enacted a higher burden of proof than was required under *Ohio v. Roberts* (1980) 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597.[8] To allow the

---

8. *Ohio v. Roberts, supra,* held that a prior statement was admissible upon a showing that the statement had indicia of reliability and that the

declarant was unavailable to testify. In *Roberts,* however, the prior statement was made in a

child's complaint to her mother or doctor, albeit in a different form than her videotaped statement, to constitute corroborative evidence of the act is to virtually eliminate the corroboration requirement and to bootstrap the statement into substantive evidence which alone would justify a conviction of the crime. Prosecution in a substantial percentage of child sex abuse cases is no doubt triggered by a complaint made by the child to an adult. The requirement of corroborative evidence was intended to act as a safeguard due to fears about the reliability of a young child. As Justice DeBruler noted in *Miller II*, while the inability of a child to understand the nature and consequences of the oath does not render a child's statement inadmissible as a matter of law, it is a significant negative factor. Furthermore, the child's young age (in *Miller II*, the child was three at the time of the incident alleged, and four at the time of trial) indicates a major disability in observing, remembering, recollecting and describing experiences. If we were to allow a complaint made by a child to an adult to constitute the requisite corroborative evidence, there would be no need to introduce evidence beyond the fact that the complaint was made.

The problem facing courts when corroborative evidence of the act is required has been well-documented. As Justice Shepard noted in *Miller I*, prosecution of sexual abuse crimes involving young children presents special problems as the child victim is often the only eyewitness to the crime and physical corroboration is often unavailable because the sex offense may be nonviolent and the child may not have resisted. Although we agree with the *Jones* court that the "statute's essential purpose should not be defeated by a stubborn insistence on corroboration that is impossible to obtain," *Jones, supra,* 772 P.2d 496, 500, and while we are sensitive to the increasing number of child sex abuse cases being reported, the fact remains that the legislature was unwilling to allow a conviction based solely upon the child's statement where the child is not available to testify.

judicial setting and was subject to the equivalent

We therefore hold that there was not sufficient corroborative evidence of the act as contemplated by subsection (d) to render the videotaped statement admissible.

We reverse and remand for further proceedings not inconsistent with this opinion.

SHIELDS, P.J., concurs.

MILLER, J., concurs in result and files separate opinion.

MILLER, Judge, concurring in result.

I concur with the majority result, but I cannot understand why the majority, in footnote 2, is reluctant to categorically state the obvious, that is, that IND.CODE § 35–37–4–6 which allows video tapes of victims under ten (10) in certain criminal actions is *not* applicable in a delinquency proceeding. The statute applies to "criminal actions"—it has long been held that delinquency proceedings are civil in nature, not criminal. IND.CODE § 31–6–3–5. *Jordan v. State* (1987), Ind., 512 N.E.2d 407.